**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000,**

**This Document Relates To Defendant Siemens AG Oesterreich.**

**No. MDL 1428(SAS).**
**No. 01 CIV. 6554.**

United States District Court,
S.D. New York.

Sept. 19, 2002.

Robert Swift, Esq., Martin J. D'Urso, Esq., Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Esq., Nagel, Rice, Dreifuss & Mazie LLP, Edward D. Fagan, Esq., Fagan & Associates, Livingston, NJ, Kenneth Nolan, Esq., Christina Frye, Esq., Speiser, Krause, Nolan & Granito, New York City, for Plaintiffs.

Thomas D. Yannucci, Esq., Christopher Landau, Esq., James F. Basile, Esq., Grant M. Dixton, Esq., Kirkland & Ellis, Washington, DC, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Nearly two years ago, a ski train in Kaprun, Austria caught fire, killing 155 passengers and crew members. Plaintiffs, parents and grandparents of six Americans [1] who died in the fire, have sued train and train part manufacturers and operators alleging negligence and strict liability.[2] Their actions against the various defendants have been consolidated before this Court by the Judicial Panel on Multidistrict Litigation ("MDL Panel").[3] Defendant Siemens AG Oesterreich ("Siemens Austria") now moves to dismiss this action for lack of personal jurisdiction, and on the ground of forum non conveniens. For the reasons stated below, the motion to dismiss for lack of personal jurisdiction is granted.[4]

1. The decedents are: (1) Jennifer Habblett Goodridge; (2) her husband, Michael Clair Goodridge; (3) their sons Michael Jonclair Goodridge; and (4) Kyle William Goodridge; (5) Carrie Lynn Baker; and (6) Erich Kern.

2. Jurisdiction is premised on diversity of citizenship. *See* 28 U.S.C. § 1332(a).

3. The actions that have been consolidated before this Court are the following: *Kern et al. v. Leitner Lifts USA, Inc. et al.*, 01 Civ. 264 (S.D.N.Y.); *Habblett et al. v. Leitner Lifts USA, Inc.*, 01 Civ. 266 (S.D.N.Y.)(closed); *Baker et al. v. Leitner Lifts*, 01 Civ. 817 (S.D.N.Y.)(same); *Habblett et al. v. Siemens AG et al.*, 01 Civ. 6554 (S.D.N.Y.); *Habblett et al. v. Verbund–Austrian et al.*, 01 Civ. 7242 (S.D.N.Y.); *Habblett v. Intersport Austria GmbH et al.*, 01 Civ. 7243 (S.D.N.Y.); *Habblett et al. v. Thyssen Schachtbau GmbH et al.*, 01 Civ. 7245 (S.D.N.Y.); *Goodridge et al. v. Gletscherbahnen Kaprun AG et al.*, 01 Civ. 7881 (S.D.N.Y.); *Habblett et al. v. Waagner–Biro AG*, 01 Civ. 5815 (C.D.Cal.), transferred to this District as 01 Civ. 10776 (S.D.N.Y.); *Habblett et al v. Leitner Lifts USA, Inc.*, 01 Civ. 1123 (D.Colo.)(closed); *Habblett et al. v. TUV Oesterreich et al.*, 01 Civ. 1794 (D.Conn.), transferred to this District as 02 Civ. 4892 (S.D.N.Y.); *Habblett et al. v. Beton–Und Monierbau et al.*, 01 Civ. 2377 (D.Conn.), transferred to this District as 01 Civ. 2491 (S.D.N.Y.); *Habblett et al. v. Swoboda Karosserie et al.*, 01 Civ. 1221 (M.D.Fla.1221), transferred to this District as 01 Civ. 10778; *Habblett v. Omniglow Corp.*, 01 Civ. 30224 (D.Mass.), transferred to this District as 02 Civ. 2492; *Habblett et al. v. Bosch Rexroth AG et al.*, 01 Civ. 4201 (E.D.Pa.), transferred to this District as 02 Civ. 3101. *See* 7/1/02 MDL Panel's Case Listing Report, attached to 7/5/02 Letter from Michael J. Beck, Clerk of the Panel, to the Clerk of the Southern District (copying this Court); Undated Chart Entitled "In re: In re Ski Train Fire in Kaprun, Austria on November 11, 2000," Received in Chambers on June 27, 2002.

4. Siemens Austria's motion to dismiss pursuant to the doctrine of forum non conveniens need not be addressed.

## I. BACKGROUND

### A. Procedural History

On July 19, 2001, plaintiffs Suzanne and John Habblett, Rudolf and Angela Kern, and Carol and Dick Baker,[5] filed their original complaint in the Southern District of New York against Siemens Austria among other defendants, including Siemens AG ("Siemens Germany"), the parent corporation of Siemens Austria. On December 12, 2001, plaintiffs filed a Consolidated and Amended Complaint in the MDL action naming John Habblett as a proposed class representative. *See* Plaintiffs' Consolidated and Amended Complaint ("MC").

In March 2002, Siemens Germany and Siemens Corporation, its New York subsidiary, moved to dismiss the action against them.[6] Siemens Austria did not join that motion as it had not yet been served with process. On June 26, 2002, Siemens Austria was finally served, *see* 7/2/02 Letter from Christopher Landau, Siemens defendants' attorney, to the Court, after which time it filed this motion to dismiss. On August 8, 2002, the Court denied the other Siemens defendants' motion to dismiss for lack of personal jurisdiction and, in the alternative, on the ground of forum non conveniens. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F.Supp.2d 376, ——, at *14 (S.D.N.Y.2002)("*Kaprun I*")(holding that the Court has personal jurisdiction over Siemens Germany, and that defendants failed to overcome the presumption in favor of plaintiffs' choice of forum). The Court did not order jurisdic-

tional discovery in *Kaprun I* because it was unnecessary; plaintiffs had already met their burden of showing by a preponderance of the evidence that the Court has personal jurisdiction over Siemens Germany. The situation with respect to Siemens Austria is quite different.

### B. Facts and Jurisdictional Allegations

Siemens Austria is a wholly-owned subsidiary of Siemens Germany. *See* MC ¶ 44; Plaintiffs' Opposition to Siemens Austria's Motion to Dismiss at 9 n. 6 ("Pl.Opp.")(citing "Siemens AG 2001 Annual Report Subsidiary List," Ex. 7 to Pl. Opp.). Siemens Austria manufactures and sells a broad range of electrical and electronic equipment products, systems and services under the Siemens brand name and other brand names. *See* Declaration of Hans Wehsely, Head of Corporate Affiliations Department for Siemens Austria ("Wehsely Decl."), Ex. A to Def. Mem., ¶ 2. Its principal place of business is Vienna. *See* MC ¶ 37. Its parent corporation, Siemens Germany, is a German corporation that has its principal place of business in Munich. *See id.* ¶ 36. Siemens Germany is one of the world's largest electrical engineering and electronics companies, and employs approximately 443,000 people in 193 countries. *See* 4/24/00 "Press Release: Siemens Completes Acquisition of ENTEX IT Services, Inc.," Siemens Website ("4/00 Press Rel."), Ex. 17 to Plaintiffs' 5/14/02 Brief in Opposition to Siemens Germany's Motion to Dismiss Based on Personal Jur-

---

5. Plaintiff Clair Goodridge brought his own action in the Southern District of New York on August 22, 2001.

6. The Siemens defendants regard that motion as having been made by both Siemens Germany and Siemens Corporation. *See, e.g.,* Memorandum in Support of Siemens Austria's Motion to Dismiss ("Def.Mem.") at 1 (referring

to motion made by Siemens AG and Siemens Corporation). Although it is unclear from the complaints whether Siemens Corporation is a defendant in either the consolidated (caption names "Siemens AG et al.") or the original action (caption names "Siemens AG d/b/a Siemens Corporation"), Siemens Corporation is hereby deemed to have joined in that motion.

isdiction, at 2. Siemens Austria is Siemens Germany's largest subsidiary in Europe, and is a market leader in the electrical and electronic industries in Austria and several Eastern European countries. *See* 2/29/00 Press Release "Softbook Press and Siemens Austria Develop Joint Electronic Book Pilot Project for Education Market," Ex. 8 to Pl. Opp.

Plaintiffs allege that Siemens Austria is the alter ego of Siemens Germany because the latter "exercises exclusive dominion and control over defendant Siemens-Austria," "the finances of Siemens-Germany [and] Siemens-Austria ... are dependent upon one another," and "Siemens-Austria ... fail[s] to observe proper corporate formalities." MC ¶¶ 40, 45. Plaintiffs also allege that Siemens Germany and its many subsidiaries around the world "are part of a multi-national enterprise with common objectives. By pursuing global purposes, defendants seek to generate large assets and operate as a single economic group." *Id.* ¶ 53. Plaintiffs' specific allegations are discussed below.[7]

## II. PERSONAL JURISDICTION

Plaintiffs argue that Siemens Austria's direct contacts with New York are sufficient to confer jurisdiction over it. In the alternative, they contend that Siemens Austria does business in New York through its parent, Siemens Germany, of which it is a "mere department."

### A. Legal Standard

Upon motion, a court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2); *Laborers Local 17 Health and Benefit Fd. v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 597 (S.D.N.Y.1998). "Prior to discovery, a plaintiff challenged

by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, *i.e.* by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). In doing so, "plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case." *Cornell v. Assicurazioni Generali S.p.A. et al.*, Nos. 98 Civ. 9186, 97 Civ. 2262, 2000 WL 284222, at *1 (S.D.N.Y. Mar. 16, 2000) (citations omitted). A court may also consider materials outside the pleadings. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001). In reviewing a motion to dismiss for lack of personal jurisdiction, a court must view all of the pleadings in the light most favorable to plaintiffs, resolving any doubts in plaintiffs' favor. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

"The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits...." *Jazini*, 148 F.3d at 183–84 (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963))(alterations, quotation marks omitted). Accordingly, this Court looks to New York law to ascertain the standards for determining whether it has jurisdiction over Siemens Austria.

### B. New York Law on Personal Jurisdiction

Plaintiffs contend that this Court may exercise personal jurisdiction over Siemens Austria pursuant to New York Civil Prac-

---

**7.** Many of these allegations were developed subsequent to the filing of the pleadings, and are therefore derived from plaintiffs' opposi-

tion papers and exhibits submitted in support thereof.

tice Law and Rules ("CPLR") § 301 (McKinney 2002)("CPLR § 301"). New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. *See* CPLR § 301[8]; *Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 191 (S.D.N.Y.2000) (interpreting CPLR § 301). Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Aerotel*, 100 F.Supp.2d at 191–92 (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)).

To determine whether a foreign corporation is doing business in New York, courts have focused on a traditional set of indicia: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has individuals permanently located in the state to promote its interests. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.2000)(Leval, J.)(citing *Hoffritz*, 763 F.2d at 58; *Frummer*, 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001). Casual or occasional activity does not constitute doing business; rather, CPLR § 301 requires a showing of "continuous, permanent, and substantial activity in New York." *Landoil Res. Corp. v. Alexander & Alexander, Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990). "The 'doing business' standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs*, 160 F.Supp.2d at 731 (quoting *Ball*, 902 F.2d at 198).

## C. Analysis

### 1. Siemens Austria's Contacts with New York

 Siemens Austria is alleged to have the following contacts with New York. In September 1999, Siemens Austria entered a partnership with a Connecticut-based company, Pocket Reader LLC, to "launch the Siemens Pocket Reader portable digital highlighter in the North American marketplace." Pl. Opp. at 17 (listing this contact under subsection of brief entitled "Siemens Austria Markets and Sells Products Directly to the New York Market"). This product was apparently available in New York at the time of the filing of the Master Complaint in December 2001. *See* Pl. Opp. at 18. Plaintiffs do not, however, allege that the Pocket Reader contract resulted in any sales in New York.

In addition, plaintiffs allege that Siemens Austria "participates in rail contracts in New York." Pl. Opp. at 17 (explaining that "Siemens" negotiated a $100 million contract with the New York City Transit Authority, a $135 million contract with the "Canarsie Line" Train Control System, and a 1997 project with the Long Island Rail Road in New York). However, these contracts refer to Siemens generally—not to Siemens Austria. Perhaps Siemens Austria sold a product or products to one of the contracting parties, *e.g.*, Siemens Germany. Yet, there is no justification under New York law for asserting jurisdic-

---

**8.** At common law, New York courts exercised general jurisdiction over foreign corporations which were doing business in the state. *See Jacobs v. Felix Bloch Erben Verlag*, 160 F.Supp.2d 722, 731 n. 7 (S.D.N.Y.2001)(Sand, J.)(citing *Hoffritz*, 763 F.2d at 58). "Because section 301 provides that '[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore,' 'doing business' in New York continues to be a basis for general jurisdiction." *Id.* (quoting CPLR § 301).

tion over any and every vendor that is tangentially involved in a contract to which Siemens Germany is a party. Plaintiffs do not argue otherwise.

Plaintiffs also allege that Siemens Austria has a website which allows users to place orders for rail vehicles and other products. For the proposition that "this website in and of itself is a basis for jurisdiction over Siemens Austria," plaintiffs cite *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29–30 (2d Cir.1996) and *Hsin Ten Enter. USA v. Clark Enter.,* 138 F.Supp.2d 449, 455 (S.D.N.Y.2000). Pl. Opp. at 18. The problem, however, is that both *Hsin Ten* and *Agency Rent A Car* address specific jurisdiction, not general jurisdiction. *See Kaprun I,* 230 F.Supp.2d at 382 (explaining the difference between general and specific jurisdiction). "[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301." *Id.* (quoting *Spencer Trask Ventures v. Archos S.A.,* No. 01 Civ. 1169, 2002 WL 417192, at *6–7 (S.D.N.Y. Mar. 18, 2002))(quotation marks omitted).

In fact, the plaintiff in *Hsin Ten* only argued that jurisdiction existed pursuant to CPLR § 302, not general jurisdiction as provided for in CPLR § 301. *See Hsin Ten,* 138 F.Supp.2d at 455. Nor did the issue as to whether general jurisdiction can be premised on Internet or electronic contacts arise in *Agency Rent A Car.* "Transacting business," which the Second Circuit found existed in *Agency Rent A Car,* is not synonymous with "doing business," as required by CPLR § 301. "Transacting" is a term of art that is only relevant for jurisdictional purposes when the plaintiff's suit is related to the transaction in question. There is no contention in this case that the accident in Kaprun, Austria "arises from" or shares a "substantial nexus with" Siemens Austria's Pocket

Reader contract in the United States, or any of its transactions over the Internet. *Agency Rent A Car,* 98 F.3d at 31.

Finally, plaintiffs argue that Siemens Austria has various contacts with "the United States." Pl. Opp. at 13–16 (entitling sections of their brief "Siemens Austria is Present in the United States" and "Other United States Based Contacts"). In 2001, Siemens Austria " 'successfully concluded . . . negotiations for the delivery of 94 metro trains to the Boston Transport Authority.' " *Id.* (citing Siemens Austria's 2001 Annual Report, Ex. 2 to Pl. Opp., at 48–49). That same year, Siemens Austria "completed a longstanding project" in San Juan, Puerto Rico. *Id.* at 14 (citing Siemens Austria's 2001 Annual Report, Ex. 2 to Pl. Opp., at 48–49). Siemens Austria also holds a United States patent. *See id.* at 13. In addition, plaintiffs devote a paragraph to a discussion of the English training that Siemens Austria provides for its employees—in an attempt to show Siemens Austria's "concerted effort to penetrate [the United States] market" and to demonstrate the "international focus" of the company. *Id.* at 13–14 (citing titles of courses offered by Siemens Austria to its employees, *e.g.,* "Basics in Business English for Purchasing Negotiations").

Plaintiffs cite no case from the courts of this State or any state that would allow New York courts to exercise general jurisdiction over a foreign corporation on the basis of its "United States-based contacts" or language courses it arranges for its employees. These arguments betray a sense of insecurity on plaintiffs' part. English is spoken in the United States as well as in the United Kingdom, Canada and Australia, and is the common language of international business. Foreign language training is simply a good business practice. Plaintiffs' attempt to make a prima facie showing of general jurisdiction by New

York courts based on English language courses for its employees, one United States patent, and a smattering of contacts in Massachusetts and Puerto Rico—verges on the frivolous.

Defendant, by contrast, has submitted a sworn affidavit to the effect that Siemens Austria does not do any business in New York. *See* Wehsely Decl. ¶ 5. Siemens Austria is not qualified or registered to do business here, does not employ any personnel or maintain an office here, and has not authorized or appointed any entity to act as its general agent for accepting service of process on its behalf in New York. *See id.* It does not have a telephone listing or mailing address in New York. *See id.* Further, Siemens Austria has no bank accounts here, and owns no real or personal property in New York. *See id.;* 8/6/02 Reply Declaration of Hans Wehsely ("Wehsely Reply Decl."), Ex. B to Siemens Austria's Reply Memorandum in Support of its Motion to Dismiss ("Def.Reply"), ¶ 2. In light of these statements and the lack of any meaningful contact alleged by plaintiffs, Siemens Austria cannot be said to conduct "systematic and continuous" business in New York.

### 2. Whether Siemens Austria is a Mere Department of Its Parent, Siemens Germany

■ Plaintiffs next argue that Siemens Austria is present in New York because it is an alter ego or "mere department" of Siemens Germany, which this Court has previously determined is present in New York by its agent Siemens Corporation.[9] "The continuous presence and substantial activities that satisfy the requirements of doing business do not necessarily need to be conducted by the foreign corporation itself." *Wiwa,* 226 F.3d at 95. While "the presence of [a] subsidiary alone does not establish the parent's presence in the state," *Jazini,* 148 F.3d at 184 (citing *Volkswagenwerk AG v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984)), personal jurisdiction over a foreign parent exists where its New York subsidiary is either a "mere department," or an "agent," of the parent. *Id.* (citing *Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d Cir.1996)). Conversely, jurisdiction exists over a subsidiary that is a mere department of a parent corporation which has a presence in New York. *See Cornell,* 2000 WL 284222, at *3 (holding that the agency and mere department tests may be applied where the foreign parent is doing business in New York and plaintiffs seek to attribute its contacts to a subsidiary, *i.e.,* the "converse" of "the ordinary CPLR § 301 attribution case")(citing cases).

To determine whether Siemens Austria is a mere department or alter ego of Siemens Germany, the Court must consider the four factors outlined in *Beech Aircraft:* (1) common ownership, which is essential; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's personnel and

9. Plaintiffs appear to argue, briefly, that Siemens Corporation in New York is also an agent of Siemens Austria because it "supports and administers [Siemens] Austria's United States contacts." Pl. Opp. at 20. This argument is without merit. Plaintiffs have alleged no facts tending to show that, were it not for Siemens Corporation, Siemens Austria would be in New York by its own officials. *See Frummer,* 19 N.Y.2d at 537–38, 281 N.Y.S.2d 41, 227 N.E.2d 851 (providing test for wheth-

er a subsidiary is an agent of a parent corporation). Moreover, Siemens Corporation is not a subsidiary of Siemens Austria. *See Pieczenik v. Dyax Corp.,* No. 00 Civ. 243, 2000 WL 959753, at *6 (S.D.N.Y. July 11, 2000) (rejecting agency argument where alleged agent was not a subsidiary of defendant, and dismissing case for lack of personal jurisdiction); *Bear, Stearns & Co. v. Ralph C. Wilson Indus.,* No. 91 Civ. 2223, 1991 WL 211203, at *4 (S.D.N.Y. Oct. 9, 1991) (same).

fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the subsidiary's marketing and operational policies. *Beech Aircraft*, 751 F.2d at 120–22. Plaintiffs are entitled to limited discovery on this issue if they make out a prima facie case that Siemens Austria is a mere department of Siemens Germany. *See, e.g., Schenker v. Assicurazioni Generali S.p.A.*, No. 98 Civ. 9186, 2002 WL 1560788, at *1–2 (S.D.N.Y. July 15, 2002).

"A corporate entity is considered to be a 'mere department' of a parent company only where the control of the lesser entity is 'pervasive enough that the corporate separation is more formal than real.' " *Jacobs*, 160 F.Supp.2d at 734 (quoting *H. Heller & Co. v. Novacor Chem. Ltd.*, 726 F.Supp. 49, 54 (S.D.N.Y.1988)). Parent corporations are allowed a range of normal shareholder involvement in the operations of their subsidiaries—without rendering those subsidiaries "mere departments" for jurisdictional purposes. *See, e.g., Beech Aircraft*, 751 F.2d at 121 (parent corporations normally control the board of directors of a subsidiary in their representative capacity as controlling shareholders). In contrast, plaintiffs must show that Siemens Germany has "disregarded the separate corporate existence of" Siemens Austria, or vice versa. *Jacobs*, 160 F.Supp.2d at 734.

Plaintiffs' showing that Siemens Austria is wholly owned by Siemens Germany satisfies the first and essential *Beech Aircraft* factor. *See Levant Line v. Marine Enter.*, 166 B.R. 221 231–32 (Bkrtcy.S.D.N.Y.1994)(citing cases). They

next allege that the second *Beech Aircraft* factor is satisfied because Siemens Austria is financially dependent on Siemens Germany. This assertion rests on the factual allegation that Siemens Germany funds the stock option component of the compensation received by managers employed by Siemens Austria and other subsidiaries in the Siemens Group.[10] *See* Pl. Opp. at 10 (citing to Siemens's [11] "Ten Point Program" ("Ten Point Program"), Ex. 9 to Pl. Opp.). As such, the assertion is not wholly conclusory. *See Jazini*, 148 F.3d at 185 (rejecting plaintiffs' mere assertion that Nissan U.S.A. was financially dependent on Nissan Japan as conclusory, and dismissing for failure to state a prima facie case that Nissan U.S.A. is a mere department of Nissan Japan). On the other hand, this assertion, without more, does not sufficiently allege that Siemens Austria is financially *dependent* on its parent, *i.e.*, that Siemens Austria cannot run its businesses without the financial backing of its parent.

Plaintiffs fail to allege any facts to support the third factor, the "degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities." *Beech Aircraft*, 751 F.2d at 120–22. Their allegation that "Siemens–Germany [and] Siemens–Austria ... fail to observe proper corporate formalities," MC ¶ 40, is entirely conclusory. "Legal conclusions couched as factual allegations are not fact[ual allegations] and cannot substitute for them." *Schenker*, 2002 WL 1560788, at *2 (holding that plaintiffs' conclusory allegations were

---

10. In contrast, defendant asserts that "all stock options for employees of Siemens AG Oesterreich (Siemens Austria) are funded exclusively by Siemens AG Oesterreich, not Siemens AG." Declaration of Thomas Traxler, Employee in Siemens Austria's Human Resources Department, Ex. A to Def. Reply.

11. The possessive of singular nouns ending in any consonant including "s" is formed by adding an apostrophe and another "s," *e.g.*, "Burns's poems," and "Charles's book." William Strunk, Jr. & E.B. White, *The Elements of Style* 1 (4th ed.2000).

insufficient to make out prima facie case for mere department status of foreign corporation defendant). Further, defendant offers sworn testimony that:

> [A]ll corporate formalities between the companies are observed; the companies have separate officers and independent boards of directors; the companies conduct separate board meetings and maintain separate minutes of such meetings; the companies maintain separate books, records, and financial accounts; the companies have separate headquarters, files and office space; and, any transactions between the companies are conducted on an 'arms length' basis and are recorded by appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles.

Wehsely Decl. ¶ 4.

Plaintiffs make several arguments with respect to the fourth factor, the degree of control Siemens Germany exercises over Siemens Austria's marketing and operational policies. They contend that the Ten–Point Program demonstrates that Siemens Germany controls and influences Siemens Austria to achieve its own "financial and strategic business goals." Pl. Opp. at 10. This allegation has no legal significance because it is perfectly appropriate for a parent corporation to urge companies it owns to achieve its strategic and financial goals: that is, in fact, the purpose behind owning a portfolio of companies.

Plaintiffs also point to the webpages of the companies, which share a "unified presentation" and use the same corporate logo. *Id.* at 11–12. This fact shows that Siemens Germany exerts some control over Siemens Austria's marketing policies, but is insufficient to show "pervasive" or "complete" control, or that the distinction between the companies is more formal than real.

Plaintiffs also argue that Siemens Austria is a mere department of Siemens Germany because the two companies hold themselves out to the world as a single entity. Siemens Germany has stated that "cross-group and cross-regional cooperation" between companies within the Siemens Group is "crucial for the success of [Siemens's] Global Network of Innovation." 2002 Siemens Germany Website, Ex. 13 to Pl. Opp. Both companies use the name "Siemens" in their advertising. This Court, however, has previously rejected this theory of jurisdiction:

> These statements (use of common trade name "Sprint" on web page, reference to conglomerate as a collective entity, etc.), intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world.

*Aerotel,* 100 F.Supp.2d at 193. *See also Jazini,* 148 F.3d at 185 (holding that statements by a foreign corporation to the effect that the company "needs to become a truly global company" and requests for "worldwide cooperation" from its subsidiaries does not show the pervasive control required to meet the prima facie test for mere department status); *J.L.B. Equities v. Ocwen Fin. Corp.,* 131 F.Supp.2d 544, 550 (S.D.N.Y.2001) ("In absence of direct evidence of control, J.L.B. relies on Ocwen's webpage, which, according to J.L.B., treats Ocwen and Ocwen Bank as one. [T]he Court is not persuaded that failure to distinguish between and subsidiary on a webpage is sufficient to show that the parent controls the subsidiary's marketing and operational policies."); *Bellomo v. Pennsylvania Life Co.,* 488 F.Supp. 744, 745 (S.D.N.Y.1980)(holding that a parent does not subject itself to jurisdiction merely by portraying an affiliate as part of a unitary enterprise).

Finally, plaintiffs allege an "overlap in management" between the two companies: Heinrich Pierer, the President and C.E.O. of Siemens Germany, serves on Siemens Austria's Board of Directors, and Jurgen Radomski, who is on the Managing Board at Siemens Germany, also serves on Siemens Austria's Board of Directors. *See* Pl. Opp. at 9–10 n. 7. In a different case, this Court granted jurisdictional discovery on the issue of interrelatedness between parent and subsidiary in light of some alleged overlap in management. *See Aerotel*, 100 F.Supp.2d at 193 (noting "considerable" overlap between the management of the parent corporation and one of the defendants, and a lesser degree of overlap between the parent and another defendant). Here, there are only two Siemens Germany-affiliated directors at Siemens Austria, and plaintiffs do not even allege "common management." *Id.* (*executives* at Sprint Corporation allegedly held comparable positions at Sprint Communications). Both men are managers or executives at Siemens Germany, but only serve Siemens Austria in a director capacity.

Moreover, "[i]t is not uncommon for a parent company and its subsidiaries to have common directors and/or owners." *Vendetti et al. v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 893 (W.D.N.Y.1992)(citing *Saraceno v. S.C. Johnson & Son*, 83 F.R.D. 65, 70 (S.D.N.Y.1979)). *See also Jerge v. Potter*, No. 99 Civ. 0312E, 2000 WL 1160459, at *2–*3 (W.D.N.Y. Aug. 11, 2000)("Having common directors and officers is a normal business practice of a multi-national corporation and absent complete control [it] is no justification to labeling a subsidiary a mere department of the parent.")(quotation marks, citation omitted). "It has been established that overlapping officers and directors are 'intrinsic to the parent-subsidiary relationship,' and that they are not determinative as to whether the subsidiary is a 'mere depart-

ment' of the parent." *J.L.B. Equities*, 131 F.Supp.2d at 550.

Because plaintiffs have failed to make out a prima facie case for this Court's exercise of personal jurisdiction, based either on Siemens Austria's direct contacts with this forum or its status as a subsidiary of a foreign corporation with a presence here, they are not entitled to discovery. *See Jazini*, 148 F.3d at 185–86 (denying request for jurisdictional discovery for failure to make out prima facie case); *Cornell*, 2000 WL 284222, at *1 (same); *see also Jerge*, 2000 WL 1160459, at *2–3 (dismissing case for lack of personal jurisdiction where no discovery had been conducted, because plaintiff failed to make out prima facie case); *Laborers Local 17*, 26 F.Supp.2d at 597–98, 604 (same). This Court "recognize[s] that without discovery it may be extremely difficult for plaintiffs in [this] situation to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York." *Jazini*, 148 F.3d at 186. It is nevertheless true that:

> The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.

*Id.* Further, such difficulties are "the consequence of problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries . . . as it properly may do." *Id.See also Mareno v. Rowe*, 910 F.2d 1043, 1045–46 (2d Cir.1990)(emphasizing corporate separateness in jurisdictional context); *Amsellem v. Host Mar-*

*riott Corp.*, 280 A.D.2d 357, 721 N.Y.S.2d 318, 320 (1st Dep't 2001)(same).

If, as in *Jazini*, plaintiffs' allegations and the web-pages they proffer were sufficient to establish a prima facie case of jurisdiction over Siemens Austria, and thus subject it to jurisdictional discovery, "it would not be difficult for [any] plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific [or legally insufficient] allegations [of jurisdiction] and thus obtain extensive discovery on that issue." *Jazini*, 148 F.3d at 185. As this "would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations—a practice in which they have not hitherto engaged," *id.*, it is not the rule.

## III. CONCLUSION

For the foregoing reasons, Siemens Austria's motion to dismiss the case against it for lack of personal jurisdiction must be granted.

SO ORDERED.