**Frederick GUNDLACH, Plaintiff,**

v.

**IBM JAPAN, LTD., Cognos K.K., Kuniya Tsubota, and John Does or Jane Does, Defendants.**

**No. 11–CV–846 (CS).**

United States District Court, S.D. New York.

Nov. 21, 2013.

Frederick W. Gundlach, Denver Borough, PA, pro se.

Allan S. Bloom, Erin E. LaRuffa, Paul Hastings LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SEIBEL, District Judge.

Before the Court is the Motion to Dismiss of Defendants IBM Japan, Ltd. ("IBM Japan") and Kuniya Tsubota (collectively, "Defendants"). (Doc. 75.) IBM Japan seeks dismissal of Plaintiff's Japanese Labor Law claims under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, under Rule 12(b)(6) for failure to state a claim.[1] Mr. Tsubota seeks dismissal of Plaintiff's state-law tortious interference claim under Rule 12(b)(6) and on the ground that he was improperly added as a Defendant under Rule 15(a)(2) and this Court's prior Order. For the following reasons, Defendants' Motion is GRANTED.

## I. *Background*

All of Plaintiff's factual allegations are accepted as true for purposes of Rule 12(b)(6) and construed in the light most favorable to Plaintiff.

In February 2008, Plaintiff commenced employment as a financial consultant in Japan with Cognos, a Japanese company. (SAC ¶ 26.) Plaintiff signed an employment contract, dated February 25, 2008, which laid out the conditions of his employment and included, among other things, the following terms: (1) Plaintiff's job would begin on February 25, 2008 and end on July 11, 2008, with the possibility of renewal if both parties consented; (2) Plaintiff would perform accounting work as a financial consultant; (3) Plaintiff would be based in Tokyo, Japan; and (4) Cognos could terminate Plaintiff at any time with thirty days' advance notice. (*Id.* Ex. C, at 1–3.) Plaintiff asserts that this contract contained a number of "irregularities" and "flaws" such that the contract was "invalid," (*id.* ¶ 29), and that ultimately Cognos did not honor it, (*id.* ¶ 35).

On March 7, 2008, Plaintiff took over the role of Financial Controller. (*Id.* ¶ 37.) Plaintiff alleges that this new position did not come with a written contract, (*id.* ¶ 38); rather, terms were deleted from Plaintiff's February 25, 2008 contract, (*id.*). Specifically, the provision concerning the limited duration of employment was crossed out, making the contract into one for "regular" or permanent employment under Japanese law. (*Id.*, *id.* Ex. C, at 1.) The deletions are accompanied by a round stamp, which functions as the seal of the corporation. (*Id.* ¶¶ 40–41.) Plaintiff affixed the seal himself, but alleges that Steve Gazzard, a

---

1. Cognos K.K. ("Cognos") is also a named Defendant in this action. Cognos, however, was acquired by IBM Japan, (*see* Second Amended Complaint ("SAC"), (Doc. 57), at 2 ("Defendants"), ¶ 25; Memorandum of Law

of Defendants IBM Japan, Ltd. and Kuniya Tsubota in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint, ("Ds' Mem."), (Doc. 79), at 2), and has never appeared in this action.

Cognos manager in Australia, authorized the modifications. (*Id.* ¶ 41.) Plaintiff contends that these contractual changes converted him from a term-limited employee to a *sei sha'in,* or permanent, employee. (*Id.* ¶ 38.)

In early 2008 IBM Japan acquired Cognos, and all Cognos employees were transferred to IBM Japan effective May 1, 2008. (*See id.* ¶¶ 25, 45.) IBM Japan and John Doe(s) allegedly insisted that Plaintiff not be transferred. (*Id.* ¶ 47.) Plaintiff contends that these same John Doe(s) "interfered" with his employment relationship with Cognos by saying that Cognos could no longer pay Plaintiff and that to continue to be paid he would have to accept a contract with IBM Japan. (*Id.* ¶¶ 48–50.) Plaintiff signed the IBM Japan contract—which was term-limited—on April 22, 2008. (*Id.* ¶¶ 55–56.)

In October 2008, Plaintiff notified the Human Resources ("HR") department at both IBM Japan and International Business Machines Corporation ("IBM US") of his concerns regarding the new contractual provisions. (SAC ¶ 66.) Specifically, Plaintiff e-mailed Mr. Tsubota, who Plaintiff alleges was responsible for employment modifications at IBM Japan, (*id.* ¶ 82), and who "did nothing to insure that plaintiff's employment would continue within Cognos and successor corporation IBM Japan," (*id.* ¶ 85). Plaintiff's employment with IBM Japan terminated on January 31, 2009, although he contends that his "permanent" employment with Cognos still exists under Japanese law. (*Id.* ¶ 72.)

Plaintiff commenced this lawsuit on February 7, 2011 by filing a Complaint, (Doc. 1), which he amended for the first time on July 29, 2011, (Doc. 28). On May 1, 2012, 2012 WL 1520919, I dismissed all claims against IBM US, but permitted the parties to engage in jurisdictional discovery to determine whether personal jurisdiction could be asserted over IBM Japan (the "May 1 Order"). (Doc. 53.) Plaintiff filed his SAC on May 23, 2012, naming Mr. Tsubota as a Defendant for the first time. (Doc. 57.) Defendants subsequently submitted this Motion to Dismiss. (Doc. 75.)

## II. *Legal Standards*

### A. *Personal Jurisdiction*

At the motion to dismiss stage, the plaintiff generally must make a *prima facie* showing by his pleadings and affidavits that the court has jurisdiction over each of the defendants. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir. 1986) (at evidentiary hearing or trial, plaintiff must demonstrate personal jurisdiction by preponderance of the evidence). A federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether it may exercise personal jurisdiction over a foreign defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir.2002). In such cases, the court must first determine if the forum's law would confer jurisdiction through its long-arm statute and then decide if the exercise of such jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment. *Id.*

### B. *Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed.R.Civ.P. 8(a)(2)).

 "While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, [courts] read them with 'special solicitude' and interpret them 'to raise the strongest argu-

ments that they *suggest.*'" *Roman v. Donelli*, 347 Fed.Appx. 662, 663 (2d Cir.2009) (summary order) (emphasis in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). Where the plaintiff is an attorney, however, as Plaintiff is here, he or she is not entitled to the same liberality afforded other *pro se* plaintiffs. *See Cohen v. Cnty. of Nassau*, No. 10–CV–5836, 2011 WL 2604345, at *1 n. 1 (E.D.N.Y. June 29, 2011) ("Given that plaintiff is an attorney, his pleadings are not entitled to the degree of liberality ordinarily given to *pro se* plaintiffs."); *Fenner v. City of N.Y.*, No. 08–CV–2355, 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("Although *pro se* litigants are generally entitled to a broad reading of their submissions because of their lack of familiarity with the law, that is not the case with attorneys who have chosen to proceed *pro se*. It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required.") (internal citation omitted).

### III. *Discussion*

#### A. *Personal Jurisdiction over IBM Japan*

 Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is "doing business" in the state. *See* N.Y. C.P.L.R. § 301. To meet that standard, a plaintiff must demonstrate that a defendant engaged in "continuous, permanent, and substantial activity in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).[2]

---

**2.** Plaintiff seems to argue that IBM Japan is doing business in New York because "IBM Japan has [previously] been a plaintiff in [the] Southern District." Plaintiff's Memorandum of Law in Opposition to Defendants IBM Japan's and Kuniya Tsubota's Motion to Dis-

In particular circumstances, however, the "continuous, permanent, and substantial activity in New York" does not need to be conducted by the foreign corporation itself. For example, under the theory of jurisdiction on which Plaintiff relies,[3] if the local entity's control of the foreign entity "extends far beyond mere ownership," a New York court may assert jurisdiction over the foreign corporation as a "mere department" of the local corporation. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984); *see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998) (Where a plaintiff alleges that a "foreign corporation is present in New York state because of the activities there of its subsid-iary, the presence of the subsidiary alone does not establish the parent's presence in the state. For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent.") (internal citation omitted).[4]

In deciding whether a foreign entity is a "mere department" of a New York corporation, courts look to four factors: (1) "common ownership," (2) "financial dependency of the subsidiary on the parent corporation," (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and (4) "the degree of control over the marketing and opera-

---

miss ("P's Opp."), (Doc. 81), at 6 n. 7.) He cites *Recyclers Consulting Group, Inc. v. IBM–Japan Ltd.*, No. 96–CV–2137, 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997), as an example of IBM Japan availing itself of the forum court. (*Id.*) *Recyclers Consulting* is inapposite. In that case, IBM Japan was the defendant, and removed the case to federal court in New York pursuant to a forum selection clause. *Recyclers*, 1997 WL 615014, at *1. Plaintiff cites another case in which IBM Japan was a plaintiff—*IBM–Japan, Ltd. v. Nippon Cargo et al.*, 93–CV–5574—which was voluntarily dismissed three months after it was filed. (No. 93–CV–5574, Doc. 3.) That IBM Japan brought one lawsuit in New York twenty years ago (or even another four years later) hardly shows "continuous, permanent, and substantial" activity here at the time Plaintiff commenced this lawsuit, and is thus insufficient to establish personal jurisdiction.

3. In his SAC, Plaintiff contends that this Court has personal jurisdiction over IBM Japan under both the "agency" and "mere department" theories of jurisdiction. Plaintiff has not argued for agency jurisdiction in his motion papers, nor has he addressed Defendants' argument that my May 1 Order—which found that "Plaintiff's construction of agency jurisdiction is insufficient to establish personal jurisdiction over IBM Japan," (Doc. 53 at 18)—precluded Plaintiff from asserting jurisdiction under an agency theory. Accordingly, Plaintiff has abandoned any claim that the Court has jurisdiction over IBM Japan under an agency theory, and only Plaintiff's arguments concerning the "mere department" theory will be addressed herein. *Cf. Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States*, No. 10–CV–7286, 2012 WL 868700, at *3 (S.D.N.Y. Mar. 14, 2012) (plaintiff faces obligation, in response to defendant's motion to dismiss, to "present arguments as to each of her causes of action. Plaintiff's failure to do so constitutes abandonment of those claims").

4. As I stated in my May 1 Order, Plaintiff argues the reverse of the situation described in *Jazini*, attempting to show that Defendant IBM Japan is subject to jurisdiction here because it is a mere department or agent of its New York-based parent corporation. Courts have, under certain circumstances, found this reverse jurisdictional theory plausible. *See, e.g., Sayles v. Pac. Eng'g & Constructors, Ltd. (PECL)*, No. 08–CV–676, 2010 WL 5334272, at *5 (W.D.N.Y. Dec. 20, 2010) (jurisdictional discovery issue related to whether foreign defendants were mere departments of parent corporations with contacts in New York); *Freeman v. Gordon & Breach, Sci. Publishers, Inc.*, 398 F.Supp. 519, 521–22 (S.D.N.Y.1975) (subsidiary subject to personal jurisdiction in New York because while "not 'physically' present in New York," it was "doing business in this State" due to relationship with parent).

tional policies of the subsidiary exercised by the parent." *Volkswagenwerk,* 751 F.2d at 120–22 (citing *Taca Int'l Airlines, S.A. v. Rolls–Royce of England, Ltd.,* 15 N.Y.2d 97, 101, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965)).[5]

■ The first factor is "essential," *id.* at 120, and the parties do not dispute that it is met.[6] Nevertheless, "the presence of a local corporation does not [automatically] create jurisdiction over a related, but independently managed, foreign corporation." *Id.* The other factors comprise a balancing test, *see Advance Coating Tech., Inc. v. LEP Chem. Ltd.,* 142 F.R.D. 91, 95 (S.D.N.Y.1992), that, applied here, weighs against exercising jurisdiction over IBM Japan.

### 1. *Financial Dependence*

■ Plaintiff contends that although it is "not clear" if IBM Japan is financially

dependent upon IBM US, IBM U.S. does "loan[ ] money to the intermedia[ry] parents for the benefit of IBM Japan." (SAC ¶ 5; *see* P's Opp. 3.) In support of his contention, Plaintiff submits a treatise discussing two recapitalizations of IBM Japan, allegedly accomplished by IBM US, occurring sometime between 1937 and 1950.[7] (P's Mem. 5, *id.* Ex. D.) The relevant time period for jurisdictional inquiry under CPLR § 301, however, is the time of service of the summons and complaint, *see Andros Compania Maritima S.A. v. Intertanker Ltd.,* 714 F.Supp. 669, 675 (S.D.N.Y.1989); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1246 n. 12 (S.D.N.Y.1977), so these ancient and apparently isolated transactions are not relevant.[8]

Defendant, on the other hand, has submitted an affidavit from Masaki Sakaue,

5. Plaintiff cites *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88 (2d Cir.2000), as "the case which would most influence the analysis of [the *Volkswagenwerk* ] factors." (P's Opp. 6.) *Wiwa,* however does not address the "mere department" doctrine but instead analyzes jurisdiction under agency theory, *id.* at 95, and is therefore irrelevant to the inquiry at bar.

6. IBM U.S. does not own IBM Japan directly, but owns 100% of intermediary companies that in turn own 100% of IBM Japan. (*See* SAC Ex. F, at 2.) Thus, for the purposes of this analysis, common ownership is established. *See Storm LLC v. Telenor Mobile Commc'ns AS,* No. 06–CV–13157, 2006 WL 3735657, at *1–2, *13 (S.D.N.Y. Dec. 15, 2006).

7. The statements in the treatise are hearsay—Plaintiff has not authenticated it as a learned treatise under Federal Rule of Evidence 803(18)—and "hearsay evidence submitted by plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction." *Park W. Galleries, Inc. v. Franks,* No. 12–CV–3007, 2012 WL 2367040, at *7 (S.D.N.Y. June 20, 2012) (internal quotation marks omitted).

8. Plaintiff also submits a newsletter concerning a tax avoidance transaction entered into among IBM US, IBM Asia Pacific Holdings, and IBM Japan. (P's Opp. 3; *id.* Ex. J (Doc. 82).) First, the newsletter is hearsay. Further, I previously ruled that minor beneficial transactions, such as the tax avoidance transaction noted by Plaintiff, do not suffice to demonstrate dependence. (Doc. 53 at 21 (citing *Reers v. Deutsche Bahn AG,* 320 F.Supp.2d 140, 157 (S.D.N.Y.2004) (financial dependency showing lacking where plaintiffs alleged facts indicating "some measure of control over the broad financial policies of its subsidiaries," but "have not clearly alleged dependency"); *Jerge v. Potter,* No. 99–CV–0312, 2000 WL 1160459, at *3 (W.D.N.Y. Aug. 11, 2000) ("Examples of situations in which financial dependency has been found are no-interest loans, control of finances of subsidiary by parent and financing of inventory by parent.") (footnotes omitted)).) That companies engage in a mutually beneficial transaction hardly shows that one of them is dependent on the other.

the HR Manager in Employment & Labor Relations for IBM Japan, (Sakaue Decl. ¶ 1),[9] which states that IBM Japan is financially independent from IBM US. Sakaue testifies that IBM Japan is financially solvent and does not rely on IBM U.S. or any other company for financial support. (Id. ¶ 4.) Sakaue further states that IBM Japan purchases and finances its own inventory, (id. ¶¶ 12–13), and earns significant annual profits from its own sales in Japan, (id. ¶ 5). Moreover, IBM Japan maintains its own bank accounts, (id. ¶ 8), and, when in need of credit, IBM Japan borrows from Japanese banks without having the loans guaranteed by IBM US, (id. ¶¶ 9–10). Finally, according to Sakaue, IBM U.S. does not make no-interest or below-market interest loans to IBM Japan. (Id. ¶ 11.) Plaintiff has not presented any evidence to the contrary. As such, factor two weighs against exercising jurisdiction over IBM Japan.

### 2. Management and Corporate Formalities

Plaintiff asserts that IBM U.S. and IBM Japan have "common management." (SAC ¶¶ 12–17.) Specifically, he alleges that Virginia Rometty, Chairman and Chief Executive Officer ("CEO") of IBM US, (id. ¶ 12), "was treated as someone who had authority over at least some of the operations of IBM Japan, if not all the operations of IBM Japan," (id. ¶ 14), and that IBM Japan's management is ultimately responsible to Ms. Rometty, albeit through other managers, (id. ¶ 12). Defendants contend that IBM Japan has its own officers and executives separate and apart from IBM US, (Sakaue Decl. ¶ 21, see id. Ex. B), and that the two entities do not share any of the same officers, (id. ¶ 22). Sakaue further testifies that IBM Japan's Board of Directors reviews and approves the appointments of all officers and senior executives, even those on assignment to IBM Japan from other entities. (Id. ¶ 24.)

Plaintiff adduces no evidence to support his conclusory allegation that IBM U.S. and IBM Japan have "common management." Even if Plaintiff is correct that Rometty has authority over IBM Japan's operations, one overlapping executive (especially one like Rometty, who is at the highest level and unlikely to participate in any day-to-day operational or personnel decisions) is insufficient to support the exercise of jurisdiction over IBM Japan. See Gallelli v. Crown Imports, LLC, 701 F.Supp.2d 263, 273 (E.D.N.Y.2010) ("[S]ome overlapping executive personnel" insufficient for finding of "mere department"; "common directors and officers is [sic] a normal business practice of a multinational corporation and absent complete control there is no justification to labeling a subsidiary a mere department of the parent"); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F.Supp.2d 403, 412 (S.D.N.Y.2002) ("It has been established that overlapping officers and directors are intrinsic to the parent-subsidiary relationship, and that they are not determinative as to whether the subsidiary

---

9. "Sakaue Decl." refers to the Declaration of Masaki Sakaue. (Doc. 77.) On a motion to dismiss, parties may submit affidavits to resolve jurisdictional disputes. See S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir.2010) (district court adjudicating motion to dismiss for lack of personal jurisdiction may rely on pleadings and affidavits or conduct evidentiary hearing); Hunter v. Deutsche Lufthansa AG, 863 F.Supp.2d 190, 198–99 (E.D.N.Y.2012) (in deciding motion to dismiss for lack of personal jurisdiction, court may make determination on basis of affidavits); Freeman, 398 F.Supp. at 520 ("With regard to motions addressed to personal jurisdiction, it is proper for the Court to rely on affidavits to establish jurisdictional facts.") (internal quotation marks omitted).

is a mere department of the parent.") (internal quotation marks omitted).

■ Plaintiff also makes much of the fact that employees from IBM entities worldwide are seconded to IBM Japan. (P's Opp. 3–4.) That several employees are "on assignment" from IBM U.S. to IBM Japan (and vice-versa) is supported by interrogatories and is not disputed by IBM Japan. (Ds' Mem. 11; Bloom Aff., Ex. B, at 3–7.)[10] The fact that a multinational corporation occasionally seconds its employees to other offices, however, is insufficient to support the exercise of jurisdiction over a foreign subsidiary. *See Morse Typewriter Co. v. Samanda Office Commc'ns Ltd.*, 629 F.Supp. 1150, 1153 (S.D.N.Y.1986) (finding transfers of employees between subsidiary and parent not sufficient for finding of mere department).

Finally, there is no dispute that IBM Japan maintains corporate formalities. Plaintiff does not contest this issue. Defendants have submitted evidence that IBM Japan maintains its own board of directors. (Sakaue Decl. ¶ 15, *id.* Ex. B.) These directors hold regular meetings at which minutes are taken, (*id.* ¶ 17, *id.* Ex. C), and decisions regarding IBM Japan are discussed and voted on, (*id.* ¶¶ 16–17, *id.* Ex. C). IBM Japan maintains its own corporate records, general ledger, and corporate governance policies. (*Id.* ¶ 19.) The maintenance of these corporate formalities weighs against the exercise of jurisdiction. *See Linde v. Arab Bank, PLC,* 262 F.R.D. 136, 143 (E.D.N.Y.2009) (observation of corporate formalities weighs against exercising jurisdiction); *In re Ski Train Fire,* 230 F.Supp.2d at 410–11 (same).

### 3. *Marketing and Operational Control*

Plaintiff also alleges that IBM U.S. controls IBM Japan's marketing and operational policies, "directly, and through the intermediate affiliates." (SAC ¶ 7.) In support of this contention, Plaintiff asserts that IBM U.S. and IBM Japan have a "globally integrated enterprise policy." (*Id.;* P's Opp. 5.) His evidence consists of various statements to this effect: a public statement by the head of operations for IBM Japan, (P's Opp. 5), statements in IBM US's annual reports, (SAC Ex. U), and the IBM U.S. CEO's discussion of multiculturalism, (*id.* Ex. H). In response, Defendants submit an affidavit declaring that IBM Japan controls its own operations, (Sakaue Decl. ¶ 26), sets its own prices, develops its own strategy for marketing, and sells through its own distribution network, (*id.* ¶ 36). According to Defendant (and Plaintiff has presented no contrary evidence), IBM Japan uses IBM US's products and services only as a starting point, modifies them for the Japanese market, and develops client-specific solutions implemented solely by IBM Japan staff without oversight by IBM US. (*Id.* ¶¶ 35–37.)

The statements Plaintiff submits are not sufficient to warrant the exercise of jurisdiction. Besides the fact that some of these statements are inadmissible hearsay, "[s]tatements of global cooperation among a parent and its subsidiaries do not support a finding of the pervasive control necessary to support a mere department holding." *Gallelli,* 701 F.Supp.2d at 274; *see Jazini,* 148 F.3d at 185 ("None of this material [statements in annual reports], and especially not a request for world-wide cooperation, shows the pervasive control over the subsidiary that the 'mere department' standard requires."); *J.L.B. Equities, Inc. v. Ocwen Financial Corp.,* 131 F.Supp.2d 544, 550 (S.D.N.Y.2001) ("[T]he Court is not persuaded that a failure to

---

10. "Bloom Aff." refers to the Affirmation of Allan S. Bloom. (Doc. 76.)

distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies.").

\* \* \*

Considering all the factors, I find substantial evidence that IBM U.S. does not exercise sufficient control or domination over IBM Japan for the latter to be considered a "mere department" of the former. Plaintiff thus has not carried his burden to establish personal jurisdiction over IBM Japan.

Accordingly, I need not reach whether asserting jurisdiction over IBM Japan would comport with Due Process—although it seems clear that it would not, for the reasons stated by Defendant, (Ds' Mem. 15–17)—nor do I need to address the sufficiency of the allegations against IBM Japan.

### B. Tortious Interference

Plaintiff did not name Mr. Tsubota as a Defendant until he filed his SAC on May 23, 2013. (SAC ¶ 81–87.) Defendants argue that Mr. Tsubota was improperly added because my May 1 Order only gave Plaintiff leave to amend his claims against IBM Japan. (Ds' Mem. 20 (citing Doc. 53 at 27).) Plaintiff responds that the May 1 Order only prohibited Plaintiff from amending his claims against IBM US, but was silent as to his claims against "John Doe," and thus his amendment was permitted.[11] (P's Opp. 13.)

Under Federal Rule of Civil Procedure 15, after the initial period for amendment expires, a party may only amend its pleading "with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(1), (2). In my May 1 Order, I granted Plaintiff leave to "amend his [First Amended Complaint] as to IBM Japan" and advised him that "he may wish to clarify exactly what breaches [of contract] he is alleging, as well as the theory of his Labor Law claim." (Doc. 53 at 27.) I did not, however, grant Plaintiff leave to amend his tortious interference claim or add Mr. Tsubota as a Defendant. Further, in my June 8, 2012 Order, I concluded that Plaintiff could not have intended to substitute Mr. Tsubota as a newly identified defendant previously known to him only as "John Doe," as Plaintiff has known Mr. Tsubota's identity since 2008. (Doc. 59.) Accordingly, even if my specifying the areas in which amendment was permitted in the May 1 Order could reasonably be interpreted as permitting other amendments—which it cannot—adding Mr. Tsubota as a Defendant was improper.

In any event, Plaintiff fails to state a claim for tortious interference with contractual relations. Under New York law, tortious interference with contractual relations requires that the plaintiff plead "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the

---

11. Plaintiff also argues that Mr. Tsubota was properly added because *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010), held that relation back under Federal Rule of Civil Procedure 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or timeliness in seeking to amend the pleading, and Mr. Tsubota should have known that he was one of

the "John Does" named in Plaintiff's original Complaint. (P's Opp. 12 (citing *Krupski*, 560 U.S. at 555–57, 130 S.Ct. 2485).) While Defendant argues that the limitations period expired before Mr. Tsubota was added in May 2013, the antecedent question, which I address here, is whether Plaintiff had leave to amend his claim for tortious interference at all.

contract without justification; (4) actual breach of the contract; and (5) damages." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir.2006) (internal quotation marks omitted).

■■■■ Plaintiff has specifically alleged that his contract with Cognos was not valid. (*See* SAC ¶ 29 (Plaintiff's contract with Cognos contained several "irregularities and flaws ... such that [it] is not valid").) Failure to allege a valid contract by itself warrants dismissal. *See Brady v. Calyon Sec. (USA)*, 406 F.Supp.2d 307, 314 (S.D.N.Y.2005) (dismissing claim where plaintiff failed to allege existence of contract between him and third party); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y.1983) (same).[12] Further, Plaintiff fails to allege Mr. Tsubota intentionally interfered with Cognos's performance of the contract. Plaintiff merely alleges that Mr. Tsubota "did nothing" to ensure that Plaintiff's employment would continue with Cognos, (SAC ¶ 85), but there are no facts suggesting that Mr. Tsubota took any action whatsoever to induce Cognos to breach its contract with Plaintiff. As such, Plaintiff fails to plausibly allege a claim for tortious interference with contractual relations. *See Boehner v. Heise*, 734 F.Supp.2d 389, 404 (S.D.N.Y. 2010) ("Plaintiffs must show Defendants' direct interference with a contract. That is, Defendants must have directed some activities toward the customers whose contracts are alleged to have been breached.") (collecting cases); *Fonar Corp. v. Magnet-*

*ic Resonance Plus, Inc.*, 957 F.Supp. 477, 481 (S.D.N.Y.1997) ("[I]n order to establish a claim under the tort of interference with contractual relations, a third party must breach the contract *after being induced to do so by the defendant.*") (emphasis added).

Accordingly, Plaintiff's claim for tortious interference against Mr. Tsubota is dismissed.[13]

## IV. *Conclusion*

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. The Clerk of Court is directed to terminate this Motion, (Doc. 75), and close the case.

**SO ORDERED.**

---

**12.** Plaintiff alleges that under Japanese law, an employer-employee relationship is considered contractual even if there is no contract. (Ps' Opp. 8.) Even if this counterintuitive proposition is true as a matter of Japanese law, there is no reason to believe that *New York* law—under which this claim arises— would recognize the existence of a contract in these circumstances.

**13.** I decline to *sua sponte* grant leave to amend this claim, both because it is, as described earlier, procedurally defective as well as substantively insufficient, and because there is in any event, after two prior amendments, no indication that Plaintiff is in possession of facts that could cure the deficiencies described in this Opinion. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir.2008); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F.Supp.2d 222, 242 (S.D.N.Y.2005).