**METEORO AMUSEMENT CORP., Plaintiff,**

v.

**SIX FLAGS, Defendant.**

**No. 5:02–CV–990.**

United States District Court,
N.D. New York.

May 27, 2003.

Hancock & Estabrook, LLP, Attorneys for Plaintiff, Syracuse, George R. McGuire, Esq., David L. Nocilly, Esq.

Ostrolenk Faber Gerb & Soffen, Attorneys for Defendant, New York, Charles P. LaPolla, Esq., Lawrence C. Drucker, Esq.

Woods Oviatt Gilman, LLP, Attorneys for Defendant, Rochester, Donald W. O'Brien, Jr., Esq., of Counsel.

## MEMORANDUM–DECISION AND ORDER

MCCURN, Senior District Judge.

### Factual and Procedural Background

Plaintiff, Meteoro Amusement Corp. ("Meteoro"), a New Mexico Corporation with its principal place of business in Lansing, New York, filed this civil action against defendant, Six Flags, Inc. ("SFI"), a Delaware corporation, on July 31, 2002. An amended complaint was filed November 15, 2002. Meteoro claims two counts of patent infringement against SFI pursuant to 35 U.S.C. §§ 271 et seq. regarding United States Patent Numbers 6,386,115 ("the '115 patent") and 6,477,961 ("the '961 patent"), seeking declaratory and injunctive relief as well as damages. Count I alleges infringement of the '115 patent for the period of time commencing at publication and concluding at issuance. See Am. Compl. ¶¶ 23–27. Count II alleges continuing infringement of both the '115 and '961 patents commencing at issuance. See id. ¶¶ 28–35.

The following are the facts as set forth in the complaint.

Meteoro is the assignee of the '115 patent, entitled "Modularized Amusement Ride and Training Simulation Device", issued on May 14, 2002. See id. ¶ 5, Ex. A. The Modularized Amusement Ride and Training Simulation Device is defined in the abstract of the '115 patent as "[a]n amusement device comprising a modular pod, in which one or more riders sit and are restrained, and which spins under power about a horizontal axis according to the passenger's active control" and "may be used in conjunction with many different types of amusement devices, including, but not limited to roller coasters". See id. Ex A. Between 1997 and 1998 Meteoro offered to sell SFI, as well as other companies such as Premier Rides and Arrow Dynamics, Inc., the technology embodied in the '115 patent. See id. ¶ 7. In 1998, copies of a video which illustrated this technology were distributed to and presumed viewed by Premier Rides, Arrow Dynamics and SFI, and in 1999 the video was made available for public viewing on Meteoro's website. See id. ¶ 8.

In December 2000, defendant SFI announced the anticipated debut of a roller coaster called "X" at its theme park, Magic Mountain, located in Valencia, California. The roller coaster was being manufactured by Arrow Communications. See id. ¶ 10. Passengers of the X roller coaster are strapped into vehicles that move 360 degrees forward or backward along a central carriage. See id. ¶ 11, Ex. E.

In September 2001, plaintiff Meteoro's CEO notified defendant SFI's CEO that if X was built and used, an infringement of plaintiff's pending patent application, Serial Number 09/814,083 ("the '083 application") would occur upon its maturation into a U.S. Patent, presently, the '115 patent. See id. ¶¶ 12, 26. SFI has never responded to this notification. See id. ¶¶ 13–15, 21.

In November 2001, the United States Patent and Trademark Office published the '083 application. The following month, X was opened to a limited audience at Magic Mountain, and was opened to the general public in January 2002. See id. ¶¶ 16–17. SFI has promoted, and contin-

ues to promote X, utilizing, among other things, its website to do so. *See id.* ¶¶ 18–20.

Plaintiff is also the assignee of the '961 patent, duly and legally issued on November 12, 2002. *See id.* ¶ 22.

Presently before the court is a motion by defendant to dismiss the entire action for failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6), for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Alternatively, defendant moves this court to transfer venue pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes this motion. Oral Argument was heard on March 18, 2003 in Syracuse, New York. The court denied the motion to dismiss from the bench as to the 12(b)(1) and 12(b)(6) grounds but reserved judgment regarding the 12(b)(3) ground and the § 1404(a) motion to transfer venue. The court now denies the 12(b)(3) motion to dismiss but exercises its discretion to transfer venue to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a).

### Analysis
### I. Venue—Rule 12(b)(3)

When addressing a 12(b)(3) motion to dismiss, the court must accept as true all of the allegations in plaintiff's complaint and construe all reasonable inferences in plaintiff's favor. *See Dolson v. New York Thruway Auth.,* No. 00–CV–6439, 2001 WL 363032, at *1 (S.D.N.Y. Apr.11, 2001). However, in defending against such a motion, plaintiff bears the burden of proving that venue is proper. *See id.* When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings. *See Brennen v. Phyto-Riker Pharm., Ltd.,* 01–CV–11815, 2002 WL 1349742, *1 n. 2 (S.D.N.Y. Jun.20,

2002), (citing *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 26 (2d Cir.1997)). Should the defendant prevail on its motion, the court still retains discretion to decline to dismiss the case in favor of a transfer to any district where the case could initially have been brought. *See id.* (citing *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993)).

Here, according to plaintiff, "venue is proper in (the Northern District of New York) pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b)." *See* Am. Compl. ¶ 2. Pursuant to § 1391(b), where, as here, subject matter jurisdiction in a civil action is based on federal question, the case may be

brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

Where, as here, a defendant is a corporation, it

shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed

to reside in the district within which it has the most significant contacts. 28 U.S.C. § 1391(c).

Finally, where, as here, the complaint alleges a claim of patent infringement, such an action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

◼ As an initial matter, it is important to note that §§ 1391(c) and 1400(b) should be read coextensively instead of the latter being the exclusive authority for determination of venue in patent infringement cases. *See VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed.Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* 869 F.Supp. 152, 155 (S.D.N.Y.1994). *Cf. Aerotel v. Sprint,* 100 F.Supp.2d 189, 194 (S.D.N.Y.2000). Thus, the question the court should answer when addressing a 12(b)(3) motion to dismiss in a patent infringement case with respect to a defendant who is a corporation is "whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced." *VE Holding,* 917 F.2d at 1584, (citing 28 U.S.C. §§ 1391(c) and 1400(b)).[1] In accordance with § 1391(c), therefore, the Northern District of New York ("Northern District") will be deemed a proper venue if it is determined that SFI is subject to personal jurisdiction there as if it were a separate state. In other words, venue in

the Northern District is proper if SFI's contacts with the District render it amenable to suit there. *See* 28 U.S.C. § 1391(c).

◼ The court may exercise personal jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *See* Fed. R.Civ.P. 4(k)(1)(A). *See also Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 94 (2d Cir.2000). When determining whether it has personal jurisdiction over a defendant in a patent case, the district court must apply the law of the state in which it sits and must defer to that state's highest court when interpreting said law. *See Aerotel v. Sprint,* 100 F.Supp.2d 189, 191 (S.D.N.Y.2000); *Rocket Jewelry Box,* 869 F.Supp. at 154–155 (S.D.N.Y.1994); *HollyAnne v. TFT,* 199 F.3d 1304, 1307 (Fed.Cir.1999). In New York, a defendant that is a foreign corporation may be subject to the general jurisdiction of its courts pursuant to section 301 of the New York Civil Practice Law and Rules where it is "doing business" in the state. *See Wiwa,* 226 F.3d at 95, citing N.Y. C.P.L.R. § 301 (McKinney 2003). Alternatively, a defendant who is a foreign corporation may be subject to the specific jurisdiction of New York courts pursuant to its long arm statute, section 302 of the New York Civil Practice Law and Rules. *See* N.Y. C.P.L.R. § 302 (McKinney 2003). When determining whether it has personal jurisdiction over a foreign defendant, this court must assess whether New York's long arm statute confers jurisdiction in light of the defendant's contacts with the forum state,

---

1. It is important to note that the latter part of § 1400(b), which states that venue is proper in the judicial district where the defendant has committed acts of infringement and has a regular and established place of business, applies to defendants that are not corporations, unlike SFI, the defendant in the present case. *See* 28 U.S.C. § 1400(b); *VE Holding,* 917

F.2d at 1580 n. 17. Therefore, the court declines SFI's invitation to undergo an analysis pursuant to the second prong of § 1400(b) and concentrates solely on the issue of personal jurisdiction. *See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 12–13.

and if so then whether such exercise of jurisdiction comports with constitutional due process. *See LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307, 735 N.E.2d 883 (Ct.App.2000). *See also Rocket Jewelry Box*, 869 F.Supp. at 155–156.

## A. General Jurisdiction: C.P.L.R. § 301

### Corporate Presence

■ A corporation is subject to the jurisdiction of New York courts when it is found to be "doing business" in New York in such a continuous and systematic manner that it is deemed present in the state. *See Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (N.Y.1917)[2]; *Landoil Resources Corp. v. Alexander & Alexander Serv.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 740, 565 N.E.2d 488 (N.Y. 1990). The test for courts to apply in determining whether a foreign corporation is doing business in New York is "a 'simple [and] pragmatic one,' which varies in its application depending on the particular facts of each case." *Landoil*, 77 N.Y.2d at 33, 563 N.Y.S.2d at 740, 565 N.E.2d 488, (citing *Bryant v. Finnish Natl. Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 208

N.E.2d 439 (N.Y.1965)). Courts have looked for more than mere solicitation to find that jurisdiction exists under section 301, and have found that activities of substance such as having office space, employees, and completing financial transactions in the forum, in addition to solicitation will render a corporate defendant amenable to suit in New York. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692 (N.Y.1982).

In its moving papers, SFI argues that it has not engaged in any "continuous and systematic course of doing business" in the Northern District because "[t]he mere indirect, stock ownership in a corporation that owns and operates one theme park in the District does not constitute the type of systematic, regular conducting of business that would subject [it] to jurisdiction in this District under CPLR § 301".[3] *See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 15.

Meteoro argues in its opposition papers that SFI's business activities bring it within the purview of section 301 because it solicits business in the Northern District via an interactive website, in addition to its "selling of tickets and accepting of employment applications, financing of operations, and contracting to supply goods and ser-

---

2. In *Tauza*, Justice Cardozo stated, "We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it is here. If in fact it is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts." *Tauza*, 220 N.Y. at 267, 115 N.E. 915.

3. Defendant submitted an affidavit of its General Counsel and Assistant Secretary, James M. Coughlin, in support of the present motion. *See* Aff. of James M. Coughlin, Dec. 13, 2002. Attached to the affidavit is a chart of the corporate structure of SFI. *See id.* at Ex.1. According to the chart, SFI is the parent of its direct subsidiary, Six Flags Operations Inc.

("SFOI"), a Delaware corporation. In addition to SFOI, SFI has five additional direct subsidiaries: GP Holdings, Inc., Premier Parks Capital LLC, PPZ Inc., PP Data Services, Inc., and Six Flags Over Georgia, Inc. SFOI owns Six Flags Theme Parks, Inc. ("SFTPI"), which owns, among other things, Funtime Parks, Inc. and Great Escape Holding Inc. Funtime Parks, a Delaware corporation, owns Funtime, Inc., a Ohio corporation, which owns Darien Lake Theme Park and Camping Resort, Inc., a New York corporation. Great Escape Holding owns Great Escape Theme Park LLC and Great Escape LLC, both incorporated in New York, and hereinafter referred to as "the Great Escape subsidiaries".

vices at its theme park here." *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 14. In addition to the sixflags.com website, Meteoro cites four UCC financing statements which, they claim, are evidence that SFI guarantees the loans of its New York subsidiary, Great Escape, LLC. *See id.* at 15; Aff. of George R. McGuire, Jan. 6, 2003 at Ex. E.

At oral argument, counsel for plaintiff admitted that defendant does not have an office or employees in the Northern District, but reiterated plaintiff's argument that defendant SFI's website activity as well as Great Escape's UCC financing statement are evidence that the "solicitation plus" standard for "doing business" is met in this case. *See* Tr. at 33–34.

Regarding the UCC financing statements, SFI claims that the only loans it guarantees are those of its direct subsidiary, SFTPI, and that its General Counsel signed Great Escape's financing statements as an officer of that subsidiary, not in his capacity as General Counsel to defendant. *See* Tr. at 37–38. A review of the four financing statements submitted to this court by plaintiff shows that defendant SFI is named in each as the parent company of Great Escape. *See* McGuire Aff. at Ex. E.[4] However, SFTPI is named in each statement as the primary borrower, and there is no mention of SFI as the guarantor of any loans. *See id.*

The issue of which entity owns and operates the sixflags.com website is a contentious one. *See* McGuire Aff. at ¶ 2, Ex. A; Reply Aff. of James M. Coughlin, Feb. 7, 2003 at ¶ 8. Assuming arguendo this court concludes defendant is that entity, nonetheless courts in this circuit have repeated-

ly found that ownership and operation of a website within the district, without more, is not enough to satisfy the "solicitation plus" standard for doing business pursuant to C.P.L.R. section 301. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F.Supp.2d 376, 383 (S.D.N.Y. 2002). This is so whether the website is "passive," (used only as a means of advertisement), *see In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* No. 01 Civ. 7342, 2003 WL 1807148, at *6 (S.D.N.Y. Apr.4, 2003); *Mason Tayler Med. Prods. Corp. v. Qwikstrip Prods., L.L.C.,* No. 99–CV–0177, 2000 WL 432807, at *3 (W.D.N.Y. Apr.14, 2000); *Drucker Cornell v. Assicurazioni Generali,* Nos. 97 Civ. 2262 & 98 Civ. 9186, 2000 WL 284222, at *2 (S.D.N.Y. Mar.16, 2000); *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.,* 74 F.Supp.2d 182, 185–86 (N.D.N.Y.1999), or as here, interactive, *see In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F.Supp.2d 403, 408 (S.D.N.Y.2002); *Citigroup, Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 569–71 (S.D.N.Y.2000).

### Presence of Subsidiary

■ Alternatively, Meteoro argues that SFI is subject to the jurisdiction of the Northern District via the business activities of the Great Escape subsidiaries. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 16–19. Mere presence of a subsidiary in the forum does not render its parent amenable to suit. *See Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir.1998). In order for a court to have personal jurisdiction over a parent via the presence of a subsidiary, the latter "must be either an 'agent' or a 'mere department' of the foreign parent." *See*

---

4. Actually, three of the four financing statements list "Premier Parks, Inc." as the parent company, but the most recent statement indicates that SFI, "f/k/a/ Premier Parks, Inc." is the parent. Therefore, in effect, the same entity, now known as SFI, has been listed as Great Escape's parent in each of the financing statements.

*id.,* (citing *Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d Cir.1996)).

### 1. Agency

In order to establish that the subsidiary is an agent of its parent, a plaintiff "must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" *See Jazini,* 148 F.3d at 184, (citing *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851, remittitur amended, 20 N.Y.2d 737, 283 N.Y.S.2d 99, 229 N.E.2d 696, and cert. denied, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967)). In other words, the test is whether the parent would have to enter the market directly if the subsidiary was absent because the market is too important to the parent's welfare. *See Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1342 (E.D.N.Y. 1981). *See also In re Ski Train Fire,* 230 F.Supp.2d 376, 385.

Meteoro argues that defendant SFI's subsidiaries in the Northern District are so important to defendant that if they were absent, SFI would enter the market. This is because, according to plaintiff, SFI's subsidiaries own real property and carry out business operations in this district. In addition, plaintiff argues, the fact that SFI's role is intertwined with the role of its subsidiaries is further evidence of an agency relationship because SFI solicits business on behalf of Great Escape, LLC, contracts with suppliers and helps provide financing. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 17. Plaintiff cites a Securities and Exchange Commission Form 10–K filed by SFOI as well as the sixflags.com website for these propositions. *See* McGuire Aff. at Ex. A2, B15–16.

At oral argument, counsel for SFI pointed out that the 10–K statement cited by plaintiff was actually filed by SFOI, not SFI, and further reminded the court that the only subsidiary whose loans defendant guarantees is SFTPI, not Great Escape, LLC. *See* Tr. at 37–38. Further, in its reply memorandum, SFI argues that the present case is distinguishable from *Bulova* because, unlike the parent company in that case, SFI's business is not significantly dependent on that of its subsidiaries. *See* Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 8, (citing *Bulova,* 508 F.Supp. 1322). As evidence of its lack of dependence, SFI cites an affidavit of its general counsel, averring that the revenue of the Great Escape subsidiaries comprises less than three percent of SFI's revenue. *See id.,* (citing Coughlin Rep. Aff. at ¶ 7). Moreover, SFI argues, the *Bulova* court found it instructive that the acts complained of in the complaint were those of the subsidiary, unlike the present case where the complaint does not allege any infringing acts by the Great Escape subsidiaries. *See id.,* (citing *Bulova,* 508 F.Supp. at 1341).

At oral argument, counsel for plaintiff argued that because defendant is a "multinational, billion dollar company," three percent amounts to almost thirty million dollars, which is a large amount of revenue earned in the Northern District. *See* Tr. at 40. However, as this court views it, the relevant inquiry is not whether the amount of revenue generated by a subsidiary exceeds a certain threshold, but instead whether said revenue, relative to the overall revenue generated by the parent, is large enough that the parent would enter the market in the absence of the subsidiary in order to make up for the financial loss. It is unlikely, given the evidence presently before the court, that SFI would enter the market itself to make up for the loss of revenue generated by the Great Escape subsidiaries. Therefore, the court

must continue its analysis regarding whether it has jurisdiction over defendant pursuant to C.P.L.R. section 301.

### 2. *"Mere Department"*

In order for the court to determine whether a subsidiary is a "mere department" of its parent, the following factors must be considered: (1) whether there is common ownership, which is essential, (2) whether the subsidiary is financially dependent on the parent, (3) the extent to which the parent exerts control over selection and assignment of subsidiary personnel and fails to observe corporate formalities, and (4) the extent of the parent's control over marketing and operational policies of the subsidiary. *See Jazini*, 148 F.3d at 184–185, (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–122 (2d Cir.1984)). .

### a. *Common Ownership*

■ Meteoro argues that the first and only essential factor exists here because, according to the Great Escape subsidiaries' New York Department of State registration statements, SFI's CEO is the chief executive of its subsidiaries and the subsidiaries share the same executive offices as their parent, defendant SFI. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 18, (citing McGuire Aff. at D1). The overlapping of directors and officers of the parent and subsidiary to some extent does not lead to the conclusion that the subsidiary is a mere department of its parent. *See Jazini*, 148 F.3d at 185, (citing *Porter v. LSB Indus.*, 192 A.D.2d 205, 600 N.Y.S.2d 867, 873 (N.Y.App.Div.1993)). However, it is indicative of common ownership that SFI owns one hundred percent of the stock of its subsidiaries, *see Tsegaye v. Impol Aluminum Corp.*, 2003 WL 221743 at *5 (S.D.N.Y., Jan.30, 2003) ("In the present case, the first factor, common ownership, is clearly met, since Impol Slovenia owns ninety percent of the stock of Impol Aluminum."), a fact which defendant itself submitted to this court. *See* Coughlin Aff. at ¶ 6. *See also In re Ski Train Fire*, 230 F.Supp.2d 403, 410, (citing *Beech Aircraft*, 751 F.2d at 121). Therefore, the court finds that the first "mere department" factor, common ownership, exists in this case.

### b. *Financial Dependence*

Regarding the second factor, Meteoro argues that the Great Escape subsidiaries are financially dependent on SFI because SFI guarantees their debts and SFI's general counsel signed many of the financing statements on behalf of Great Escape, LLC. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 18, (citing McGuire Aff. at E, E–17 and E–31). SFI counters that their general counsel signed those financing statements in his capacity as an officer of the subsidiary, not SFI, and therefore the statements are not evidence that SFI guarantees Great Escape's loans. *See* Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 9, (citing Coughlin Reply Aff. at ¶¶ 17–19). Meteoro's proffer nonetheless falls short of what is required to show financial dependence. To establish financial dependence, plaintiff must show that the Great Escape subsidiaries could not be run without the financial backing of SFI. *See In re Ski Train Fire*, 230 F.Supp.2d 403, 410. There is no allegation, for example, as to the percentage of the subsidiaries' business that is conducted with SFI as opposed to third parties. *See Impol Aluminum*, 2003 WL 221743 at *5. Where a subsidiary had received numerous loans from its parent, had yet to repay them, and was dependent upon the parent's continued financial support to stay in business, the Court held that the subsidiary was a "mere department" of, and thus the court had jurisdic-

tion over, the parent. *See Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722, 735 ( S.D.N.Y.2001), (citing *Beech Aircraft,* 751 F.2d at 121). Such is not the case here. The fact that SFI (through its wholly owned subsidiary SFOI) guaranteed two loans for its subsidiaries does not rise to the level of financial control required by courts in this circuit. *See Impol Aluminum,* 2003 WL 221743 at *5; *In re Ski Train Fire,* 230 F.Supp.2d 403, 410; *Jacobs,* 160 F.Supp.2d at 735. Therefore, because plaintiff has not established sufficient evidence of financial dependence, the second factor of the "mere department" analysis does not weigh in its favor.

### c. Control of Selection and Assignment of Personnel

As to the third factor, Meteoro admits that due to a lack of discovery there is little evidence at this stage of litigation regarding control by SFI over selection and assignment of subsidiary personnel. However, plaintiff argues that since SFI and the Great Escape subsidiaries share a CEO, there is an inference of such control. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 18, (citing McGuire Aff. at E–1) [5]. Courts have found that excessive overlap of board members, officers, directors, or employees between a parent and its subsidiary will infer control by the parent over the selection and assignment of subsidiary personnel. *See Obabueki v. Int'l Bus. Machs. Corp.,* Nos. 99 Civ. 11262 & 99 Civ. 12486, 2001 WL 921172, at * 5 (S.D.N.Y. Aug.14, 2001), (citing *Satcorp Int'l Group v. China Nat'l Import & Export Corp.,* 917 F.Supp. 271, 278–79 (S.D.N.Y.1996)). *Cf. J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F.Supp.2d 544, 549 (S.D.N.Y.2001), (citing

*Porter v. LSB Indus., Inc.,* 192 A.D.2d 205, 214, 600 N.Y.S.2d 867 (A.D. 4th Dep't 1993); *Jazini,* 148 F.3d at 185) (finding that "overlapping officers and directors are 'intrinsic to the parent-subsidiary relationship,' and that they are not determinative as to whether the subsidiary is a 'mere department' of the parent".) *But see Self Int'l (HK) Ltd. v. La Salle Nat'l Bank, Chicago,* 01 Civ. 4291, 2002 WL 500372 at *3 (S.D.N.Y. Mar.29, 2002), (citing *Jazini,* 148 F.3d at 185) (finding that "[a]lthough it is normal in a parent-subsidiary relationship for corporate officers to overlap 'to an extent,'" where there is 'mirror image symmetry' between the executive personnel of the parent and subsidiary, there is a suggestion of considerable control by the parent over its subsidiary.) For example, where a subsidiary's four member board of directors were also officers or directors of its parent, the court found that the third factor of the "mere department" analysis weighed in favor of an exercise of the court's jurisdiction over the parent. *See Obabueki,* 2001 WL 921172, at *5. Here, plaintiff only alleges that there is one overlapping officer, Kieran Burke, who apparently is CEO of both SFI as well as Great Escape Holding, Inc. *See* Am. Compl. ¶ 12; McGuire Aff. at Ex. D–1. While defendant did not address this factor in its moving papers or at oral argument, plaintiff's allegation falls short of the required proffer of evidence of any interference by defendant in the selection and assignment of its Great Escape subsidiaries' personnel. Therefore, the third factor of the "mere department" analysis does not weigh in plaintiff's favor here.

### d. Extent of Control Over Marketing and Operational Policies

Meteoro argues that the fourth factor, control over marketing and operational

---

**5.** A review of Mr. McGuire's Affidavit leads this court to conclude that the intended citation was Exhibit D–1, not E–1.

policies, exists here, citing a feature article regarding Gary Story, SFI's President and COO, on the sixflags.com website as evidence that SFI's president admits exerting control over daily operations and investments of its subsidiaries. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 18, (citing McGuire Aff. at B14–16; C3–4). In fact, the referenced article states that Story visits management teams at the thirty nine worldwide properties, directs operations at corporate headquarters, and invests millions in company properties. *See* McGuire Aff. at Ex. C. SFI's general counsel avers that SFI has no control over the day to day operations or decision making of SFOI or any of the New York subsidiaries. *See* Coughlin Aff. at ¶¶ 8, 10–11.

At oral argument, counsel for plaintiff called the court's attention to specific language in SFOI's SEC Form 10–K, which plaintiff interprets to state that defendant SFI "is responsible for overseeing all the marketing and operations of all their individual parks." *See* Tr. at 41, citing McGuire Aff. at Ex. B–2. Defense counsel countered that all references to "Six Flags" in the 10–K statement are actually references to SFOI, not SFI, and thus all oversight functions should be attributed only to SFOI. *See* Tr. at 42. The court's review of the 10–K statement reveals that in the introductory paragraph, SFI is defined as "Six Flags" while SFOI is defined as "the Company."[6] The reader is then told that SFI operates thirty eight parks, but the remainder of the paragraph discusses SFOI's operation of thirty five parks, as well as its management of the

development of a new park in Spain. *See* McGuire Aff. at Ex. B–2. Several pages into the statement are sections referred to as "Marketing and Promotion" and "Park Operations", respectively. *See id.* at Ex. B–14, 15. Under "Marketing and Promotion" it is explained that SFI's Senior Vice President for marketing supervises SFOI's marketing programs, with the assistance of SFI's senior management and in house marketing staff, as well as SFI's national advertising agency. *See id.* at Ex. B–14. Under "Park Operations" it is explained that each park is managed by a general manager who reports to one of SFI's Executive Vice Presidents, each of whom reports to SFI's Chief Operating Officer. *See id.* at B–15.

The Story article, by itself, presents little evidence of the pervasive control required for a determination that the fourth factor of the "mere department" analysis weighs in plaintiff's favor here. Certain activities by a parent company in regard to its subsidiaries amount to little more than a shareholder's management of its investments, and should not result in a determination that said subsidiaries are its "mere departments". *See In Re Ski Train Fire,* 230 F.Supp.2d 403, 410. *Cf. Obabueki,* 2001 WL 921172 at *5 n. 10. However, the 10–K Statement, while simply alluding to SFI's indirect control over the marketing policies of its Great Escape subsidiaries, provides evidence of more direct control over operations, to wit, the requirement that general managers of all parks report directly to defendant.[7] *See* McGuire Aff. at Ex. B–14, 15.

---

**6.** According to SFI's organizational chart, SFOI is a direct subsidiary of SFI. Great Escape Holding, Inc. is three steps removed from SFI, and the Great Escape subsidiaries are four steps removed. *See* Coughlin Aff. at Ex. 1.

**7.** *But see* Aff. of Del Holland, Dec. 9; 2002 at ¶ 5. (Vice President of SFTPI and General Manager of Magic Mountain theme park avers that neither he nor any SFTPI employees report directly to anyone at SFI.)

Finally, plaintiff cites *Cali v. East Coast Aviation Servs.*, 178 F.Supp.2d 276, 287 (E.D.N.Y.2001) for the proposition that the most compelling evidence that a subsidiary is a mere department of its parent is a "unified marketing image that indicates that the various entities operate as one company." *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 19, (citing *Cali*). While this case is applying Pennsylvania, not New York law, and the New York case Meteoro cites does not appear to advance the same theory, *see* id., (citing *Satcorp*, 917 F.Supp. at 278), other cases applying New York law have commented on the impact a unified image has on the "mere department" analysis. *See In re Ski Train Fire*, 230 F.Supp.2d 403, 411; *Shin Won Corp. v. La Salle Nat'l Bank*, 01 Civ. 3580, 2002 WL 424663, at *4 (S.D.N.Y. Mar.19, 2002); *Obabueki*, 2001 WL 921172, at *5; *J.L.B. Equities*, 131 F.Supp.2d at 550; *Aerotel*, 100 F.Supp.2d at 193.

Meteoro argues that the sixflags.com website presents SFI and its subsidiaries as one entity by reporting that SFI owns and operates all of its theme parks, by issuing press releases on behalf of all of the parks, and by using the same logos, trademarks and marketing images for SFI and all of the parks. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue at 19. However, SFI ar-gues that the homepage of the website clearly indicates that it is operated by SFTPI and not SFI.[8] *See* Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 9. Moreover, SFI notes that another District Court disregarded such an argument in a similar case, stating "[t]hese statements, intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world. In addition, the copyright at the bottom of the web page is in the name of (the subsidiary company) providing further proof of the independence of that company from (its parent)." *Aerotel*, 100 F.Supp.2d at 193. In *Aerotel*, while the court held that the overlapping management between parent and subsidiary was enough to deny a pretrial motion to dismiss for lack of personal jurisdiction in order to allow for jurisdictional discovery, a company's website, which presents itself to the marketplace under a common trade name, similar to the sixflags.com website, was found to be not enough to show a unified marketing structure. *See id.* at 193, 197[9]. *See also In re Ski Train Fire*, 230 F.Supp.2d 403, 411 (finding that "webpages of the companies, which share a 'unified presentation' and use the same corporate logo ... shows that (the parent company) exerts some control over (its subsidiary's) marketing policies, but is insufficient to show 'pervasive' or 'complete' control, or that the dis-

---

**8.** At oral argument, counsel for plaintiff argued that SFI is the record owner of the website, *see* McGuire Aff. at Ex. A–30, but defense counsel countered that SFI is actually the record owner of the domain name, whereas the website is owned and operated by SFTPI, not SFI. *See* Tr. at 45–46. Since the court does not find in favor of plaintiff's overriding argument that the website presents a unified marketing image such that the Great Escape subsidiaries are "mere departments" of SFI, it declines to address the issue of the ownership and operation of the website at this time.

**9.** Plaintiff's argument that *Aerotel* is distinguishable because the website in that case was not interactive is without merit. *See* Tr. at 44. The distinction between a website that is interactive and one that is merely an advertising tool is relevant to the issue of whether a corporation itself is present in New York, not whether a subsidiary is a "mere department" of its parent. *See* supra, page 9. Therefore, the court need not address this argument here.

tinction between the companies is more formal than real."); *J.L.B. Equities,* 131 F.Supp.2d. at 550 (stating that "the Court is not persuaded that a failure to distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies.").

However, some courts have found that such a "unified marketing image" on a company's webpage will militate in favor of a finding that the subsidiary is a "mere department" of its parent, where there is some other direct evidence of control. *See Shin Won,* 2002 WL 424663, at *3, 4 (finding that plaintiff made at least a colorable showing of jurisdiction which warranted an opportunity for discovery where subsidiary's services were offered only through the parent's website, subsidiary's assets and liabilities were not distinguished from the parent's on its financial statements, a "mirror image symmetry" existed between executive personnel of both parent and subsidiary, and the subsidiary's operating structure was left unchanged after its incorporation by parent); *Obabueki,* 2001 WL 921172, at *5 n. 10 (finding that court had jurisdiction where, in addition to the lack of distinction between parent and subsidiary on the corporate website, there was extensive overlap between executives and board members of the parent and its subsidiary, and the parent's annual report failed to distinguish its subsidiary).

Here, aside from the statements in SFOI's Form 10–K regarding the requirement that all of the subsidiaries' park managers report to SFI about park operations, there is little evidence of direct control. Therefore, this court finds in accordance with the line of cases that decline to view a unified marketing image on a corporation's website as evidence that a subsidiary is a "mere department" of its parent for jurisdictional purposes.

Moreover, the only evidence presented by plaintiff regarding any of the "mere department" analysis factors is the 10–K statement regarding park operations. Plaintiff clearly has not shown that SFI's control over the Great Escape subsidiaries is "pervasive enough that the corporate separation is more formal than real." *In re Ski Train Fire,* 230 F.Supp.2d 403, 410, (citing *Jacobs,* 160 F.Supp.2d at 734, (quoting *H. Heller & Co. v. Novacor Chem. Ltd.,* 726 F.Supp. 49, 54 (S.D.N.Y.1988))). "Parent corporations are allowed a range of normal shareholder involvement in the operations of their subsidiaries-without rendering those subsidiaries mere departments" for jurisdictional purposes." *Id.,* (citing *Beech Aircraft,* 751 F.2d at 121). Therefore, after weighing all of the evidence presented on this issue, the court finds that the Great Escape subsidiaries are not "mere departments" of SFI.

Because the court finds that is has no general jurisdiction over SFI pursuant to C.P.L.R. section 301, attention is directed to C.P.L.R. section 302 to determine whether, in the alternative, there are grounds for specific jurisdiction in this case.

**B. Specific Jurisdiction: CPLR § 302**

■ A defendant who is a foreign corporation may be subject to the specific jurisdiction of New York courts pursuant to its long arm statute, C.P.L.R. section 302, which provides, in part, the following:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state. N.Y. C.P.L.R. section 302(a).

As an initial matter, of the four bases for long arm jurisdiction in New York, Meteoro argues that only section 302(a)(2) applies in this case. See Pl.'s Mem. of Law in Opp'n to Def.'s Motion to Dismiss or Transfer Venue, at 19–21. Therefore, although defendant addresses all four bases in its memorandum of law, the Court will limit its discussion to the parties' arguments regarding section 302(a)(2), commission of a tortious act within the state. See Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 16–19.

SFI first argues that in order for a court to confer its jurisdiction on a defendant pursuant to section 302(a)(2), the defendant must commit a tortious act while physically present in New York. See Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 17, (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir.1997), (citing *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965))). According to defendant, the construction of the infringing roller coaster took place in California and its design and contract negotiation took place in Utah and Oklahoma, respectively. *See* id. Therefore, defendant argues, since no infringing act took place within the Northern District, and plaintiff failed to allege otherwise in its complaint[10], the court does not have jurisdiction pursuant to section 302(a)(2).

Meteoro alleges that this court may extend its jurisdiction over defendant SFI pursuant to section 302(a)(2) because it committed a tortious act with the state, to wit, patent infringement. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Motion to Dismiss or Transfer Venue, at 19–2; C.P.L.R. section 302(a)(2). According to U.S. Patent Law, it is infringement to make, use, offer to sell or sell any patented invention in the United States. *See* 35 U.S.C. § 271(a). It is also infringement to induce infringement of a patent. *See* § 271(b). Meteoro argues that SFI is "actively soliciting the purchase and renewal of season passes through the Internet website" in the Northern District to be used at the site of the infringing roller coaster in Valencia, California. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Motion to Dismiss or Transfer Venue, at 19. According to Meteoro, this constitutes a direct offer for

**10.** Although plaintiff does not address this statement in its opposition papers nor did it do so at oral argument, the court notes that all that is required of plaintiff is to plead a "short and plain statement of the grounds upon which the court's jurisdiction depends". *See* Fed.R.Civ.P. 8(a). Plaintiff's allegations regarding defendant's ownership of a theme park in the Northern District as well as its use of a website to promote the alleged infringing roller coaster clearly meet this liberal notice pleading standard. *See* Am. Compl. ¶¶ 6, 18. *See also* Fed.R.Civ.P. 8(a); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1351 (2d Cir.1974), (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

sale and actual sale of passes in the Northern District to use the infringing roller coaster in violation of §. 271(a) as well as an inducement to infringe in violation of § 271(b), and therefore constitutes commission of a tortious act within the state of New York. *See* id. at 20–21.

SFI counters that an Internet user in the Northern District cannot purchase a season pass to enter Magic Mountain, the location of the alleged infringing roller coaster, because only buyers with a billing address inside a three hundred mile radius of a theme park may purchase a season pass to that park from the website.[11] *See* Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 10; Coughlin Reply Aff. at ¶¶ 9–14, Ex. B. Defendant then clarifies its position by explaining that a New York resident could theoretically use the alleged infringing roller coaster with a season pass purchased via the sixflags.com website, but that resident would first be required to visit a Six Flags theme park within a three hundred mile radius of his or her credit card billing address. *See* Coughlin Reply Aff. at ¶ 12; Tr. at 49. Therefore, defendant argues, this contact with New York is indirect and tenuous enough to shield it from long arm jurisdiction because the sale of a season pass that takes place within the state is not a sale for use of the alleged infringing roller coaster, but a sale for admittance to a New York, or perhaps a New Jersey, theme park. *See* id.

First, the tortious act upon which plaintiff bases its argument that the court has jurisdiction over defendant pursuant to section 302(a)(2) is the infringement of its patent through defendant SFI's sale and offering for sale, season passes to Northern District residents from its website.

Therefore, the court need not address defendant's argument that section 302(a)(2) is inapplicable because the construction, design and contract negotiations regarding the alleged infringing roller coaster took place outside New York. The contentious issue is whether defendant was physically present in New York at the time the alleged tortious act took place, to wit, the solicitation and sale of season passes to Northern District residents from its website.

In *Bensusan,* the Second Circuit found that the infringing acts giving rise to the lawsuit, to wit, the authorization and creation of the website as well as the use of the infringing words, occurred in Missouri and not New York, and therefore section 302(a)(2) jurisdiction was lacking. *See Bensusan,* 126 F.3d at 29. That case involved a claim of trademark infringement via publication of the alleged infringing words on defendant's website. *See id.* at 27. Other cases in this Circuit have held accordingly in trademark infringement cases involving website publication, reasoning that "to hold otherwise would create 'nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site.'" *See Telebyte, Inc. v. Kendaco, Inc.,* 105 F.Supp.2d 131, 134 (E.D.N.Y.2000), (citing *Hearst Corp. v. Goldberger,* No. 96 Civ. 3620. 1997 WL 97097, *1 (S.D.N.Y. Feb.26, 1997)). *See also Roberts–Gordon, LLC v. Superior Radiant Prods., Ltd.,* 85 F.Supp.2d 202, 213–214 (W.D.N.Y.2000). Likewise, section 302(a)(2) jurisdiction was found to be lacking in a patent infringement case where defendant allegedly advertised the infringing product from its website, made accessible in New York, and allowed potential customers to obtain in-

---

11. Once again, the issue of ownership and operation of the sixflags.com website need not be addressed by the court at this time, since the court finds that section 302(a)(2) jurisdiction is lacking on other grounds. *See* supra, at 26–27.

formation on product availability as well as provide contact information via the website. *See Westvaco Corp. v. Viva Magnetics, Ltd.*, No. 00 Civ. 9399, 2002 WL 19337569, *2 (S.D.N.Y. Aug. 20, 2002). Here, however, season passes are not only advertised, they are sold to Northern District residents via the website. The Federal Circuit has held, and courts in this Circuit have agreed, that the situs of the injury in patent infringement cases is the location where the infringing sale takes place, as this is where the patent owner suffers economic harm via a loss of business. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570–1571 (Fed.Cir.1994). *See also Safe Strap Co. v. RDN Int'l*, No. 01 Civ. 3695, 2002 WL 14360, *1 (S.D.N.Y. Jan 4, 2002); *Art Leather Mfr. Co. v. Albumx Corp.*, 888 F.Supp. 565, 568 (S.D.N.Y.1995); *Rates Tech., Inc. v. UTT Corp.*, No. 94–Civ. 0326, 1995 WL 16788, *2 (S.D.N.Y. Jan.18, 1995). Clearly, in the present case, the location where plaintiff would suffer a loss of business would be the location of the buyer, to wit, the Northern District, and not the location of the creation of the website, which is the vehicle for the infringing sale.

Nonetheless, the court agrees with defendant that plaintiff has failed to allege sufficient facts to show that SFI has committed a tortious act. The connection between the purchase of a season pass by a resident of the Northern District and the use of said pass to gain admission to Magic Mountain in Valencia, California to ride the alleged infringing roller coaster seems to the court to be quite tenuous. Since plaintiff does not rebut the factual allegations proffered by defendant regarding the conditions for use of a season pass purchased by a Northern District resident to ride the alleged infringing roller coaster, the court finds that jurisdiction is lacking pursuant to section 302(a)(2).

### C. Due Process

Because the court finds that jurisdiction is lacking pursuant to New York's long arm statute, due process analysis is unnecessary. *See* U.S. Const. amend. XIV, § 1; *Bensusan*, 126 F.3d at 27.

Therefore, since the court finds that it would lack personal jurisdiction over defendant in the Northern District if it were a separate state, *see* 28 U.S.C. § 1391(c), it must also find that venue in the Northern District is improper. However, based upon this finding, the court is not required to grant defendant's motion to dismiss, but may, in its discretion, choose instead to transfer the case to a proper venue. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988), (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). The court now addresses the parties arguments regarding the appropriateness of a transfer of venue.

### II. Transfer of Venue— 28 U.S.C. § 1404(a)

Should the court deny its motion to dismiss for improper venue, defendant moves in the alternative for a transfer of venue pursuant to 28 U.S.C. § 1404(a) to the Western District of Oklahoma,[12] or alternatively to the Central District of California or the Southern District of New York.

---

12. On December 16, 2002, SFTPI, a subsidiary of SFI, filed suit against plaintiff Meteoro in the Western District of Oklahoma seeking a declaratory judgment of invalidity and non-infringement of a patent in suit in the present action. *See* Coughlin Reply Aff. at ¶ 4. Defendant SFI anticipates that plaintiff will be amending its complaint to add SFTPI as a defendant in this case. *See* Aff. of Charles P. LaPolla, Feb. 7, 2003 at ¶ 2, Ex. A–B; Order of Magistrate Judge DiBianco, Feb. 12, 2003 at Dkt. No. 25.

*See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue, at 19. Defendant has made clear that the foregoing is its order of preference, such that its first choice for venue is the Western District of Oklahoma. *See* id.; Tr. at 63.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold question that must be answered when a court addresses a motion pursuant to section 1404(a) is "whether the action could have been brought in the district to which transfer is sought." *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 56 (N.D.N.Y. 1990). Here, the Western District of Oklahoma is the district where defendant's corporate headquarters are located. The alleged infringing roller coaster is located in the Central District of California, and defendant has offices in the Southern District of New York. Both parties have agreed that each of these districts would be a proper venue as to defendant SFI. *See* Tr. at 51. Therefore, the court finds that the threshold question is answered in the affirmative.

 Once the threshold is met, as it is here, the court has discretion to transfer the case, but such a motion will not be granted absent a clear showing by defendant that the balance of convenience factors weighs in favor of a transfer. *See Aquatic,* 734 F.Supp. at 56. Moreover, the burden is on the moving party to establish that there should be a change in venue. *See id.* In determining whether to grant a motion to transfer venue, the following factors may be considered by the court:

the convenience to parties; the convenience of witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interests of justice. *See Vassallo v. Niedermeyer,* 495 F.Supp. 757, 759 (S.D.N.Y.1980). Further, in this circuit, when a party seeks a transfer based on convenience of witnesses pursuant to [section] 1404(a) he must clearly specify the key witnesses to be called and must make a general statement of their testimony.... That is so because convenience to the witnesses is a very important factor. In addition to the factors listed above, the relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider.... The consideration of comparative calender conditions is also relevant.... Finally, ... the plaintiff's choice of forum is an additional consideration.

*Id.* at 56 (citing *Pellegrino v. Stratton Corp.,* 679 F.Supp. 1164, 1167 (N.D.N.Y. 1988)).

 Meteoro argues that their choice of forum should be given great weight.[13] *See id.* at 21. However, under § 1404(a), the plaintiff's choice is no longer given decisive weight as was the case as with its predecessor, the doctrine of forum non conveniens. *See Pellegrino,* 679 F.Supp. at 1167 (citing *Vassallo v. Niedermeyer,* 495 F.Supp. 757, 759 (S.D.N.Y.1980) (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955))).

---

**13.** Plaintiff's arguments for preserving its choice of venue are recounted for the sake of completeness only, since the Court has already found that venue is not proper in the Northern District of New York.

Presently, the most substantial weight is given to the convenience of witnesses. *See id.*

Here, defendant SFI argues that the convenience of witnesses militates in favor of transfer to the Western District of Oklahoma. *See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue, at 21. Since the majority of witnesses will be from Oklahoma City, where SFI's corporate offices are located, and presumably plaintiff will only have two witnesses, SFI argues it will be much more convenient for them to travel to the local federal courthouse than to the Northern District of New York. *See* id.

Initially, SFI failed to identify potential witnesses with particularity in its memorandum of law. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Motion to Dismiss or Transfer Venue, at 22. However, defendant cured this omission by submitting an affidavit signed by SFI's general counsel, James M. Coughlin, as part of its reply papers, wherein affiant set forth the names and locations of fifteen potential witnesses, eight of which are located in Oklahoma City, four in Valencia, California, two in Missouri and one in New Jersey. *See* Coughlin Reply Aff. at ¶ 20. Defendant's list includes two categories of witnesses: those who will testify about the purchase of X from Arrow Communications, and those who will testify about its "design, development, structure, function, manufacture and operation". *See* id. at ¶ 21. Additionally, defendant expects eight witnesses from Arrow Communications to testify regarding "the design, development, structure, function and manufacture of the X–Coaster ride, the sale of the ride to SFTPI, the documents and circumstances surrounding that sale, the financial and business records of Arrow, the cost, profits, and revenues relating to the sale of the X coaster." Id. at ¶ 22.

These witnesses are all located in Utah. *See* id. *See also* Holland Aff. at ¶ 10.

Plaintiff argues that the majority of "relevant" testimony will come from its witnesses, including its CEO and inventor of the patented devices at issue in this case, John F. Mares. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or, Alternatively, for a Transfer of Venue at 22. Mr. Mares resides in the Northern District of New York and is the only person active in the operation of the plaintiff corporation. *See* Mares Aff. at ¶ 2. In addition to operating Meteoro, Mr. Mares is employed as a Vice President for a corporation located in Ithaca, New York. *See* id. at ¶ 3. Mr. Mares avers that for the foregoing reasons, it would be a severe hardship for him to litigate his claim in another district. *See* id. at ¶ 4. *See also* Tr. at 55. At oral argument, plaintiff's counsel identified an additional witness, Bob Perls, who is associated with Meteoro but resides in New Mexico. *See* id. at 54. Counsel for plaintiff also suggested that Meteoro may require expert testimony and would seek to find such an expert within this District. *See* id.

Defense counsel noted at oral argument that Mr. Mares will be deposed in this district "no matter what." *See* id. at 60. Moreover, defendant argues that for the majority of witnesses, including Mr. Perls and the attorney who prosecuted one of the patents at issue in this case, who also resides in New Mexico, it would be more inconvenient to travel to the Northern District of New York than it would to travel to Oklahoma or California. *See* Tr. at 58. *See also* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue at 22 n.7. Plaintiff counters that for most of the potential witnesses defendant identifies, deposition testimony can be taken where they are located, so the inconvenience of travel will be on the parties, not the wit-

nesses. *See* Tr. at 60. In addition, whichever venue the court chooses, some witnesses will be inconvenienced by travel, and the costs associated with a longer traveling distance are not a substantial enough showing of inconvenience to outweigh the plaintiff's choice of forum. *See* id. at 61.

SFI also argues that the availability of process to compel the testimony of unwilling witnesses is an important factor. *See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue, at 21. *See also* Tr. at 56. Plaintiff contends that any testimony proffered by defendant regarding the design and construction of X is irrelevant, since the roller coaster was built prior to the issuance of the patents defendant allegedly infringed, although defendant counters such testimony is relevant to plaintiff's allegation of willfulness. *See* Tr. at 54, 62. Moreover, as plaintiff previously argued, and the court tends to agree, non-party witnesses would be deposed where they are located, and defendant failed to identify any reason why this would not be so. *See* Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue, at 21, 23; Tr. at 60.

There is also disagreement between the parties as to whether a firsthand viewing of the alleged infringing roller coaster would be necessary, a factor that if proved important would militate in favor of the Central District of California as the proper venue. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, or, Alternatively, for a Transfer of Venue at 23–24; Mem. in Supp. of Def.'s Mot. to Dismiss or Transfer Venue, at 22. At oral argument, Defense counsel argued that photographs or design blueprints of the alleged infringing roller coaster will not be sufficient to show a jury whether said coaster, as it currently exists, is infringing plaintiff's patents. *See* Tr. at 62–63.

Additionally, defense counsel argues the location of most documents needed for litigation is SFI's headquarters in Oklahoma City. Although the documents can be shipped, this involves an added cost and inconvenience that should weigh in favor of a transfer of venue to the Western District of Oklahoma. *See* Tr. at 59.

Finally, Meteoro argues that the disparities in the financial means of the parties weighs greatly in favor of denying SFI's motion to transfer. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Motion to Dismiss or Transfer Venue, at 24. Plaintiff cites the affidavit of its president as evidence of the hardship a transfer would cause, but cites no authority for its allegation that defendant has over one billion dollars in annual revenue. *See id.* (citing Mares Aff at ¶¶ 1–3). Counsel for plaintiff argues that a transfer to any of the three districts defendant suggests would require that Meteoro retain local counsel, and thereby incur additional costs. *See* Tr. at 55.

The court finds, after weighing the evidence before it, that venue is most proper in the Western District of Oklahoma. Defendant's headquarters, as well as a near majority of potential witnesses, are located in Oklahoma City. The only factor weighing in favor of the Central District of California, aside from it being the location of a small number of potential witnesses, is that it is the location of the alleged infringing roller coaster. However, there is disagreement as to the evidentiary significance of a viewing of the roller coaster by being in its presence instead of viewing photographs or design blueprints. Further, very little evidence was submitted regarding the appropriateness of the Southern District of New York as a venue, except that defendant has offices there. Finally, the court has already found that the Northern District is an improper venue. Plaintiff's main witness, John Mares,

who resides in the Northern District, will be inconvenienced regardless of the forum the Court chooses. The only additional witness specified by plaintiff is located in New Mexico and will likewise be inconvenienced by the Court's choice of forum. Therefore, the motion to dismiss for improper venue will be denied and this case will be transferred to the Western District of Oklahoma.

### Conclusion

Based on the foregoing, defendant's motion to dismiss for improper venue is DENIED and its request for a transfer of venue to the Western District of Oklahoma is hereby GRANTED. Defendant's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted were DENIED from the bench on March 18, 2003.

IT IS SO ORDERED.